## City of Easton *v.* Miller, Appellant.

*Municipalities—Ordinances—Police powers—Street railways— Direction of traffic—Public Service Commission Act—Interstate commerce.*

1. An ordinance of a city providing that "all vehicles including street passenger cars shall, upon entering the public square known as Centre Square turn to the right thereof, and pass around said square as herein directed," is not an unreasonable exercise of the police power of the city, where it appears that the square in question was practically the heart of the city's commercial life, and that on one of the approaches to it there passed between the hours of six o'clock a. m., and six o'clock p. m., 6,371 vehicles of all descriptions, including four hundred street cars which received and discharged daily from 25,000 to 40,000 passengers.

2. The right of a city to enact such an ordinance was not taken away by the act creating the Public Service Commission.

3. Such an ordinance is not an arbitrary, unreasonable or oppressive exercise of the power, because it involves some readjustment of the company's schedule and some relocation of the tracks on a few streets.

4. Such an ordinance does not impose a burden on interstate commerce even if some of the street cars which entered the square were engaged in such commerce, so that the right of the city to enact the ordinance became a federal question cognizable in the federal courts.

Argued March 10, 1919. Appeal, No. 198, Jan. T., 1919, by defendant, from judgment of Superior Court, Oct. T., 1917, No. 44, affirming judgment of C. P. Northampton Co., April T., 1915, No. 51, on verdict for plaintiff in case of City of Easton v. A. R. Miller. Before BROWN, C. J., STEWART, FRAZER, WALLING and SIMPSON, JJ. Affirmed.

Appeal from judgment of the Superior Court.

The proceeding in the common pleas was for the imposition of a penalty for the violation of an ordinance of the City of Easton regulating traffic upon its streets and highways. The appellant, the defendant below, was a motorman in the service of the Easton Transit Company. The facts in the case and the questions involved appear

in the following opinion of the Superior Court, affirming the judgment against the defendant:

"The defendant is a motorman in the service of the Easton Transit Company, a corporation duly authorized to operate street cars on the streets of the City of Easton. He was arrested for an alleged violation of the provisions of a city ordinance regulating the traffic on certain busy streets; such regulation requiring vehicular traffic of every kind to move only in a prescribed direction on a particular street. After a hearing before the mayor he was found guilty. An appeal to the court of common pleas was asked for and allowed. The case was tried before a judge and jury. A verdict for the plaintiff followed upon which judgment was entered and the defendant appeals to this court.

"The elaborate brief filed by the able counsel for appellant covers a very considerable extent of what we may term legal 'terrain' and discusses many important propositions. After an attentive consideration of the entire subject we have determined we can best indicate the reasons for the conclusion we have reached by a brief consideration of the four questions we now state:

"(1) Before the public service law of the State became effective, would it have been within the police power of the City of Easton to have enacted an ordinance, reasonable in its terms, regulating the traffic on its streets, if such regulation required the moving of all street cars in a prescribed direction?

"(2) If the answer be in the affirmative, was the city shorn of the right to exercise such power by the passage of the act creating the Public Service Commission?

"(3) Can an appellate court of law, under the facts found, declare the ordinance in question was arbitrary, unreasonable and oppressive?

"(4) Did the ordinance impose a burden upon interstate commerce of such character that the right of the city to enact it became a federal question cognizable only in the federal courts?

"(1)  The ordinance in question was originally enacted in 1911.  It was entitled 'An ordinance regulating traffic upon the streets and highways of the City of Easton, declaring certain acts pertaining thereto nuisances and prescribing penalties therefor.'  No difficulty appears to have arisen until in December, 1914, the said ordinance was amended by the addition thereto of six new sections. The particular one of them which appears to give rise to the contention we are now considering is section eighteen which provides, 'All vehicles, including street passenger cars, shall, upon entering the public square known as Center Square, turn to the right thereof and pass around said square as herein directed.'  Unless the police power of the State, delegated for proper purposes to the City of Easton, has lost some of the characteristics that have heretofore been regarded as incident to a legal exercise of such power, it is difficult to perceive why the subject-matter of the ordinance in question was not well within the lines so often recognized as defining a zone, within which such power could rightfully be exercised.   The evidence shows that the square in question is practically the heart of the city's commercial life.  From that center pulsates, through the radiating street arteries, a great portion of its business activities.   The testimony taken, which is undisputed, shows that on one of the streets in question there passed between the hours of six o'clock a. m. and six o'clock p. m. six thousand three hundred and seventy-one vehicles of all description.   This number included something over four hundred street cars of the Easton Transit Company.   These cars would daily receive and discharge from twenty-five thousand to forty thousand passengers.   The regulation by the city of such traffic, so as to avoid congestion, manifestly had for its purpose additional security for the lives and limbs of the public, additional protection to property in the course of transportation and the promotion of the public convenience generally.  These are the badges of a proper exercise of the police power.  In Radnor Township v. Bell, 27 Pa.

Superior Ct. 1, this court, in a learned and careful opinion by our Brother ORLADY, fully discussed the question of police power in so far as it may with propriety be discussed in any given case. Again in Central Market Company v. Erie, 44 Pa. Superior Ct. 191, we endeavored to show why the limits of the police power could not be measured by fixed and rigid lines and why in each case, as it arose, the courts could but pass upon the question immediately presented. In these opinions many cases from our own courts and those of other jurisdictions were reviewed and analyzed. In no one of them had it ever been held that an ordinance of the character of the one now before us was an abuse or an improper exercise of the police power inherent in every state and delegated by the State to the municipal agencies it has chosen to create. We are of opinion it was entirely competent for the City of Easton to enact the ordinance in question and that such enactment was a legitimate exercise of the police power lodged in the city.

"(2) We do not think it was within the contemplation of the legislature, when it passed the public service law, that it was dealing with the cities of the Commonwealth or was attempting to deprive them of any power reasonably necessary to enable them to perform their legitimate municipal functions. It has not been before contended, to our knowledge, that the Public Service Commission has any jurisdiction whatever to determine that a municipality could not continue to do that which it was legally empowered to do before the public service law became effective. It is true the commission may decline to approve of a contract proposed to be entered into between a municipality and a public service company. That is not because it has any jurisdiction over the municipality, which continues to be competent to enter into a proper contract without any aid from the Public Service Commission. The result referred to flows from the fact that the commission has authority to withhold its approval of a contract about to be entered into by a

public service company, and without that approval the company cannot legally enter into the contract. The contract therefore fails because only one of the two parties, to wit, the city, was competent to contract. We are of opinion the public service law in no way deprived the City of Easton of the right to enact the ordinance in question.

"(3) Is there anything in this record that would warrant this court in declaring, as a matter of law, the terms of the ordinance complained of were unreasonable? We think not. The fact that it may involve some readjustment of the schedules of the transit company may be conceded. It is quite possible that obedience to it may also require some relocation of the tracks of the company on the few streets in question. But such facts do not justify the conclusion that the franchise of the transit company, in the eyes of the law, has been either destroyed or impaired. A company accepting a franchise that involves a use of the public streets of a city or other municipality must accept it subject to the continuous right of such municipality to perform its strictly legal functions and obligations even though such performance may entail some expense upon the holder of the franchise in readjusting its pole lines, water and gas pipes, street car tracks and the like to the new situation brought about by the lawful act of the city. Such was the doctrine declared in American Tel. & Tel. Co. v. Harborcreek Township, 23 Pa. Superior Ct. 437, as well as Scranton Gas and Water Co. v. Scranton, 214 Pa. 586. A brief quotation from the opinion of Mr. Justice STEWART in the case last cited will fully illustrate the views of this court on the question before us: 'So far as property rights are concerned, there is but slight correspondence between the easement enjoyed by appellant company in the streets of the city, and the rights of the abutting owners in their several properties. The distinctions between the two are too obvious for discussion. It is enough to say, with respect to the former, that it is held

and enjoyed subject always to the earlier and superior rights of the public in the streets of the municipality. Among these is the power to regulate and control the streets in the interest of public health and safety. When these demand a change in the mode and manner of the enjoyment of the easement or privilege, and that demand is expressed through the municipal authority, in the exercise of reasonable discretion, that change must be made. Calling the legislative grant of privilege to use the streets a contract does not avoid the conditions on which the privilege is to be exercised. Whether such limitation or conditions be expressed in the grant or not is immaterial, for, as said in Butcher's Union Slaughter House Co. v. Crescent City Live Stock Co., 111 U. S. 746, the power to control and regulate the streets so as to protect the public health, is one that cannot be bargained away by legislative or municipal grant. The power to control them for the protection of public safety, if not the same, stands on equally high ground. The same doctrine was again applied by this court in Springfield Water Co. v. Phila. & Garretford Street Ry. Co., 45 Pa. Superior Ct. 516. The reasonable and proper exercise by a municipality of its police power is readily distinguishable from situations where the municipality, acting on a mistaken sense of its power, would undertake, for instance, to prescribe the mechanical means and appliances by the aid of which a public service company would operate its cars and transport its passengers or freight. We need not prolong this opinion by referring to them in detail. We conclude the terms of the ordinance in question, as they apply to the operation of the cars of the transit company, could not be declared to be arbitrary, unreasonable or oppressive.

"(4) The argument of the learned counsel for the appellant on this question is perhaps sufficiently answered by the statement of the learned court below that it does not appear 'from the testimony that the cars engaged in interstate commerce enter the square.' If that statement

of the fact be true, and it appears to be, an elaborate discussion of the question raised would be entirely beside the mark. We do not think it would be difficult to show that there is nothing in the provisions of the ordinance here complained of that could fairly be said to place such a burden upon interstate commerce as would make the ordinance obnoxious either to federal legislation or decision. As we write we are informed by the public press of the decision handed down by the Supreme Court of the United States two days ago declaring unconstitutional a federal statute commonly known as the child labor law. We quote the following from the published excerpt of the opinion of the court: 'The grant of power to Congress over the subject was to enable it to regulate such commerce and not to give it authority to control the states in their exercise of the police power over legal trade and manufacture.'

"After mature reflection on all of the questions involved we reach the conclusion that the ordinance in question was a valid exercise of the power lodged in the city to regulate traffic on its streets and as a consequence the action of the learned court below exhibits no reversible error.

"Judgment affirmed." City of Easton v. Miller, 69 Pa. Superior Ct. 554.

From the judgment of the Superior Court an appeal was allowed to the Supreme Court on the two following questions: "(1) Before the public service law of the State became effective, would it have been within the police power of the City of Easton to have enacted an ordinance, reasonable in its terms, regulating the traffic on its streets, if such regulation required the moving of all street cars in a prescribed direction? (2) If the answer be in the affirmative, was the city shorn of the right to exercise such power by the passage of the act creating the Public Service Commission?"

*Error assigned* was the judgment of the Superior Court.

*Asher Seip* and *H. J. Steele,* for appellant.—The Easton Transit Company, being the real defendant in this case, submits that the Public Service Company Law revokes the power of the City of Easton to legislate upon the subject-matter of the ordinance in question: Townsend v. City of Circleville, 16 L. R. A. (N. S.) ; York Water Co. v. York, 250 Pa. 115; Fort Pitt B. & L. Assn. v. Model Plan B. & L. Assn., 159 Pa. 308; Rung v. Shoneberger, 2 Watts 23.

*Aaron Goldsmith,* with him *N. R. Turner,* for appellee.

OPINION BY MR. CHIEF JUSTICE BROWN, May 12, 1919:

While nothing can be profitably added to the opinion of the Superior Court, affirming the judgment of the court below, we may add a word of concurrence in the view that the City of Easton had the power to pass the assailed ordinance and to enforce it against the Easton Transit Company. That the city possessed such power prior to the passage of the Public Service Company Law of July 26, 1913, P. L. 1374, is undoubted. One of the purposes of the State in creating a municipality is to give it the control of its streets: City of Williamsport v. Commonwealth ex rel., 84 Pa. 494; and in recognition of this inherent power in a city or borough, as the agent or representative of the Commonwealth, to exercise supreme control over its highways, in the interest of the safety of the general public, there was inserted in Article XVII of the Constitution of the State the provision that "no street passenger railway shall be constructed within the limits of any city, borough or township, without the consent of its local authorities." Neither the legislature nor courts can trespass upon the discretion thus given to those authorities: Allegheny City v. Millville, Ætna & Sharpsburg Street Railway Company, 159 Pa. 411; Carlisle & Mechanicsburg Street Railway Company's App., 245 Pa. 561. Without the consent of the City of Easton the

tracks of the Easton Transit Company could not have been laid upon its streets. After the easement upon them was acquired, with the consent of the city, and the tracks were laid, whenever in the interest of public safety it became necessary to change the measure of the enjoyment of the easement or privilege, and the municipal authorities so declared, in the exercise of a reasonable discretion, the transit company was bound to submit to the change: Scranton Gas and Water Company v. Scranton City, 214 Pa. 586. A jury, the court below and the Superior Court have held that the ordinance in question is reasonable, and in this we concur. Was the power to pass it taken away by the Public Service Company Law?

The Act of July 26, 1913, defines public service corporations and provides for their regulation by prescribing and defining their duties and liabilities. It does not make a municipality a public service company, and cities and boroughs, acting strictly as such, are unaffected by it in the exercise of their functions and powers and in the performance of their municipal duties. The Public Service Commission fully understands this, for it has said: "Speaking generally, this commission would have no authority under the act of assembly to issue any orders against boroughs, since they are not public service companies, within the meaning of the Public Service Company Law. Such boroughs are vested with certain authority over the use and occupation of the streets and highways within their territorial limits, and for an abuse of such authority, unwarrantably interfering with the performance of the railway's duty as a public service company, the company would have an appropriate remedy in the courts": In re Use of Streets of Municipality by Street Railway, 2 Pa. Corp. Rep. 127. This seems to be overlooked by learned counsel for appellant in citing York Water Company v. City of York, 250 Pa. 115, in support of their contention that the regulation of the use of the streets of the City of Easton by the transit company is for the Public Service Commission. As pointed out by

our late Brother ELKIN, the water company had become a public service corporation by the Public Service Company Act, and the power which had been given to the city by the Act of June 27, 1913, was expressly taken from it by the repealing clause of the Act of July 26, 1913. No power vested in the City of Easton prior to the passage of that act has been taken from it, even by implication. All that it insists upon now is that its reasonable control over the use of its streets by the transit company continues unimpaired by any legislation. It has not attempted to dictate the kind of cars to be used, what equipments are to be upon them, or how they are to be manned. In short, it is not attempting to interfere with any control given to the Public Service Commission over the operation of the transit company's cars; and it could not: Mahoning & Shenango Ry. and Light Company v. New Castle, 233 Pa. 413. It is merely exercising its continued power to regulate, by a reasonable ordinance, the use of the easement which it gave to the transit company.

The objections urged against the ordinance are groundless, and the judgment of the Superior Court is affirmed.