# Valley Railways, Appellant, *v.* Harrisburg et al.

*Street railways—Municipal consent—Contract—Use by one railway of track of another company—Reasonable ordinances—Police power—Rule of road — Changed condition of traffic — Merger— Laches—Acquiescence in use of street—Equity—Jurisdiction—Injunction—Public Service Commission—Acts of June 19, 1871; P. L. 1360; May 14, 1889, P. L. 211; July 26, 1913, P. L. 1374, and March 23, 1921, P. L. 43.*

1. When a municipal franchise ordinance is accepted and acted on by a street railway company, it becomes an irrevocable contract protected by the Constitution.

2. An ordinance authorizing a street railway company to occupy a portion of a street is not void because the railway company had not, prior to the date of the ordinance, recorded and filed its resolution to occupy such portion of the street as provided by section 4 of the Act of May 14, 1889, P. L. 211. The act does not say that such recording and filing must precede its power to contract with the municipality.

3. If, subsequently, a similar resolution is adopted and duly recorded and filed, and the company operates its line on the street for twenty-five years therafter, the city cannot assert the invalidity of the ordinance granting the use of the street.

4. A street railway company has the right to make a reasonable divergence from its chartered route, and such right cannot be challenged in a collateral proceeding by the city which granted such right, but only by direct action by the Commonwealth, or by a private party under the Act of June 19, 1871, P. L. 1360, whose rights are invaded.

5. And especially such right cannot be challenged by the city after it has acquiesced in its enjoyment by the railway company for thirty years, and after the original company became merged with other companies.

6. While a street railway company may not enter a city without its consent, yet if the consent is once given, the legislature may authorize the merger of such company with others and clothe the merged company with all the rights of the constituent companies as to the use of the streets previously granted by the city to the original company; and especially is this so where there was no limitation imposed as to the extent or manner of the use.

7. Where a street railway company accepts a franchise ordinance subject to all regulations of the city then in force or thereafter to be made, such regulations must be reasonable; a power to regulate is not a power to destroy.

8. An ordinance which attempts to exclude the railway company from all occupation of the street is unreasonable and will not be upheld by the courts.

9. A statute or ordinance under the police powers must be reasonable.

10. The rule of the road as to keeping to the right cannot be applied to a single track railway upon the side of a highway in such a manner as to entirely exclude it from the use of a track without turnout leased from another company.

11. Where a street railway company with a single track has leased from another company with two tracks the use of one track both ways in a block in the city, and the city has acquiesced in such use for thirty years, and then, because of congestion of traffic, passes an ordinance practically forbidding the use of such track by the lessee company, the enforcement of such ordinance will be restrained by a court of equity.

12. The court will not defer passing upon the merits of such case pending a decision by the Public Service Commission upon an application which may be made to it to provide for an interchange of facilities between the two street railway companies, by which the lessee may obtain the use of the other track for the proper movements of its cars.

13. Where the question involved relates to the validity of a city ordinance regulating the movement of cars of a street railway com-

pany, such question is within equity jurisdiction, notwithstanding the Public Service Commission Law of July 26, 1913, P. L. 1374, as amended by the Act of March 23, 1921, P. L. 43.

14. While the court will grant an injunction to restrain the enforcement of the ordinance, it will be without prejudice to the right of the city or other party in interest to ask the Public Service Commission for relief.

15. Where a corporation shares with another like corporation the exclusive privilege of occupying a street for railway purposes, the joint use of the street should be regarded for purposes of regulation as though it were a single company, and if such continued use proves unsafe, the Public Service Commission on application by the municipality or the railway affected, may require such rerouting of cars as will facilitate the general movement and proper public control of traffic on the highways.

MR. CHIEF JUSTICE MOSCHZISKER, and MR. JUSTICE SIMPSON, concurred, to the extent that they would enter an order reversing the court below, reinstating the bill, and directing it to grant a preliminary injunction to maintain the status quo, so that the municipality or any of the corporations concerned, may file an application with the Public Service Commission for proper relief.

Argued February 12, 1924.   Appeal, No. 12, May T., 1924, by plaintiff, from decree of C. P. Dauphin Co., Equity Docket, 1923, No. 751, dismissing bill in equity, in case of Valley Railways v. City of Harrisburg, George A. Hoverter, Mayor, and Joseph Thompson, Chief of Police.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and KEPHART, JJ.   Reversed.

Bill to restrain enforcement of a municipal ordinance. Before HARGEST, P. J.

The opinion of the Supreme Court states the facts.

Bill dismissed: 26 Dauphin Co. R. 272; 12 Pa. Corp. R. 201.   Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Spencer G. Nauman,* with him *W. S. T. Hurlock, Jr., J. E. B. Cunningham,* and *Charles H. Bergner,* for appellant.—The franchise granting the use of the streets to

the Harrisburg & Mechanicsburg Railway Company constitutes a contract which cannot be impaired: Hestonville, etc., R. R. v. Phila., 89 Pa. 210; American T. & T. Co. v. Twp., 195 Pa. 643; Jitney Bus Assn. v. Wilkes-Barre, 256 Pa. 462.

The municipality having acquiesced in and consented to the use and occupancy of the streets by the railway company for a period of nearly thirty years is estopped from questioning the rights of the railway company to operate over the streets as heretofore: Bradford v. T. & T. Co., 206 Pa. 582; Jordan v. Ry., 25 Pa. Superior Ct. 564; Penna. R. R. v. Ry., 167 Pa. 62; Spokane Street Ry. v. Spokane Falls, 33 Pac. 1072; Chicago, R. I. & P. R. R. v. Joliet, 79 Ill. 25; Kulp v. P. S. C., 82 Pa. Superior Ct. 83; Windsor Glass Co. v. Carnegie Co., 204 Pa. 459; Olyphant Sewage Co. v. Boro., 196 Pa. 553; Passyunk Avenue B. M. Assn v. P. S. C., 73 Pa. Superior Ct. 242; Western Pa. R. R. Co.'s App., 104 Pa. 399, 407.

By merger of 1913 all the rights of the Harrisburg & Mechanicsburg Electric Railway Company vested in the new company, which had the right to operate all of the cars of the constituent or merged companies over its entire route: Southside Pass. Ry. v. Ry., 191 Pa. 492.

The municipality having created the congestion on Second Street and Market Street by permitting parking of automobiles along the curb, cannot, in the exercise of the police power, pass an ordinance that injures plaintiff railway company and confiscates its property, even if such ordinance purports to be a regulation of traffic intended to prevent congestion: Phila. v. Scott, 81 Pa. 80; Chicago v. Laflin, 49 Ill. 172; Com. v. Canal Co., 66 Pa. 41; Meadville v. Canal Co., 18 Pa. 66; Erie City v. Canal Co., 59 Pa. 174.

The ordinance is in violation of the Public Service Company Law of 1913 in that it is an attempt to regulate the service of a public service company which is a matter entirely and exclusively within the jurisdiction of the

Public Service Commission: New York & Penna. R. R. v. P. S. C., 72 Pa. Superior Ct. 523; Peoples Nat. Gas Co. v. P. S. C., 79 Pa. Superior Ct. 560; Swarthmore Boro. v. P. S. C., 277 Pa. 472.

*John R. Geyer,* with him *Paul G. Smith,* for appellee. —When the original ordinance granting a franchise to a street railway company was void because that company had no corporate capacity to accept the grant, the company cannot set up this ordinance and its continued use of the street as a contract unimpairable by municipal regulation: Com. v. R. R., 27 Pa. 339; Homestead Street Ry. v. Ry., 166 Pa. 162; Com. ex rel. v. Ry., 203 Pa. 608.

The continued use of a highway by a street railway company, which located its tracks under a municipal contract void for want of capacity of the company to take, does not estop the municipality from questioning the legality of the franchise on a bill by the company to restrain the city from enforcing a municipal regulation of traffic: Holmes Electric Protective Co. v. Armstrong, 162 N. Y. Sup. 770; Milwaukee v. Electric Ry. & Light Co., 180 N. W. 339; Town of Bangor v. Traction & Elec. Co., 147 Mich. 165; Carlisle, etc., R. R. Co.'s App., 245 Pa. 561.

A street railway company created by merger cannot operate the cars of all the constituent companies over the tracks of but one of its constituent companies to which alone municipal consent was granted: Conshohocken Boro. v. Ry., 206 Pa. 75; South Side Pass. Ry. v. Ry., 191 Pa. 492; Punxsutawney Boro. v. Gas & Oil Co., 238 Pa. 23; Kane & Elk R. R. v. R. R., 241 Pa. 608.

The ordinance regulating traffic, including street cars, on Second Street is a valid exercise of the police power of the municipality and is not confiscatory, arbitrary, unreasonable or oppressive: Buffalo Branch Mut. Film Corp. v. Breitinger, 250 Pa. 225; Easton v. Miller, 265 Pa. 25; Scranton Gas & Water Co. v. Scranton, 214 Pa. 586.

The ordinance is not in violation of the Public Service Company Law of 1913.

OPINION BY MR. JUSTICE WALLING, April 21, 1924:

This appeal by plaintiff is from a final decree dismissing its bill in equity brought to restrain the enforcement of a city ordinance. In 1892 the Harrisburg and Mechanicsburg Electric Railway was chartered as a street railway company, under the Act of May 14, 1889, P. L. 211, with power to construct and operate a line of railway, beginning at Second and Market streets, Harrisburg (a city of the third class), extending thence west in Market Street to Front Street and from there north in Front Street to Walnut Street, where, turning westerly, it crossed the Susquehanna River, on the Peoples Bridge, and continued to Mechanicsburg, the line being nine miles long. In view of objection to Front Street being used for that purpose, the railway company, in April, 1893, adopted a resolution so that its line would extend from its terminus at Second and Market streets, north in Second Street to the center of Walnut Street, a distance of approximately five hundred and ten feet, thence westerly in Walnut Street to its chartered route at Front Street. The divergence was as to the manner of going half way around one block, the distance being the same. In October, 1893, the defendant city, by what we will call "the franchise ordinance," granted the company a right to construct and operate its line of railway in and upon Second and Walnut streets (in accordance with the resolution), which was accepted by the railway company. At that time there was a double track street railway in Second Street, controlled by an operating company from whom in 1894 the Harrisburg and Mechanicsburg company leased the western track, from Market to Walnut streets, for the term of ninety-five years. The nine-mile line, a single track railway, was promptly built, the eastern end thereof coming up the center of Walnut Street and joining the leased line at Second Street. This rail-

way, including the track leased in Second Street, was in constant use as an electric railway for nearly thirty years; but by some oversight the above-mentioned resolution was not recorded in the office of the proper recorder of deeds nor an exemplified copy thereof filed with the secretary of the Commonwealth as required by section 4 of the Act of 1889. To remedy this omission, in 1898, another resolution, of like import, was adopted by the railway company and duly recorded and filed as that section provides.

Other companies built electric railways extending beyond Mechanicsburg and by sundry mergers those lines and the Harrisburg and Mechanicsburg Electric Railway, in 1913, became consolidated as one system, owned and operated by a corporation named Valley Railways, the plaintiff herein. This corporation has 43.64 miles of railway, operates thirty-nine cars and its daily patronage in and out of Harrisburg amounts to about five thousand passengers. Being a single track, without a turnout upon or east of the bridge, necessitates running the cars in both directions on Second Street, also on Walnut Street, and frequently as many as six or seven of these cars are on Second Street at one time. Second Street at this point faces Market Square, which is the business center of the city and a congested district, especially as the city street car line discharges and receives passengers there in large numbers. It is also thronged with automobiles, which, so far as permitted, park around the square. Under conditions as they have grown to be, the presence and movement of plaintiff's cars, especially the northward movement on Second Street, add to the congestion and increase the danger at that point. In an apparently bona fide effort to relieve the situation, the defendant city adopted an ordinance in June, 1923, prohibiting the northward movement of any vehicles, including street cars, upon the west side of Second Street, inter alia, between Market and Walnut streets, and providing penalties for violation thereof.

The enforcement of this ordinance would exclude all of plaintiff's cars from Second Street as there is no exit except by running them back north to Walnut Street on the single track; therefore, plaintiff brought its bill in equity to restrain the enforcement of the ordinance. After a hearing, the lower court held the ordinance valid and entered a decree dismissing plaintiff's bill; from which the latter brought this appeal.

The trial court properly holds that, as the case involves the right of private property, also save a multiplicity of suits, equity has jurisdiction (M. & S. Ry. & L. Co. v. New Castle, 233 Pa. 413; Martin v. Baldy, 249 Pa. 253; Pennsylvania R. R. Co. v. Ewing, 241 Pa. 581); it certainly has jurisdiction to prevent the annihilation of the property right or to maintain the status quo (Fogelsville v. Pa. Co., 271 Pa. 237, 245); but we cannot affirm the final decree. When a municipal franchise ordinance is accepted and acted upon by a street railway company it becomes an irrevocable contract: Grand Trunk Western Ry. v. South Bend, 227 U. S. 544; Hestonville & C. R. R. v. Phila., 89 Pa. 210. The latter case holds that a franchise solemnly granted cannot be subverted by a city ordinance; in such case it becomes a property right protected by the Constitution: 19 R. C. L. p. 1154; and see Dillon on Municipal Corporations, vol. 3, (5th ed.) p. 1984; 12 C. J. 1015, 1016.

It is contended, however, that the ordinance of 1893 was void because the railway company had not then recorded and filed its resolution. We do not so read the statute. What section 4 of the Act of 1889, P. L. 211, provides, is: "Any company incorporated under this act, shall have authority to construct such extensions or branches as it may deem necessary to increase its business and accommodate the travel of the public: Provided, That the act of the company authorizing any extension or branch, shall distinctly name the streets and highways on which said extensions or branch is to be laid and constructed, and a copy of the minutes of said

company containing said authority shall be recorded in the office of the recorder of deeds for the proper county, and an exemplification of the said record shall be filed in the office of the secretary of the Commonwealth, and no right to actually construct the same shall vest until after thirty days from the filing of said exemplification"; but does not say such recording and filing must precede its power to contract. There is a distinction between a contract for and the actual occupancy of a street. If the ordinance was valid when granted, a premature entry upon the street did not abrogate it. Of course the ordinance was not granted in view of the later resolution, but it is too late to expel an electric railway company from a street, for lack of a recorded and filed resolution, twenty-five years after one has been recorded and filed, embracing the identical subject. The franchise ordinance embraced both Second and Walnut streets; if void as to the former because of the company's lack of power to accept it, it was equally so as to the latter; yet the city concedes plaintiff's right in Walnut Street, and for thirty years construed the ordinance as entitling plaintiff to move its cars in both directions on its Second Street track.

Furthermore, the original company had the chartered right to have its eastern terminal at Second and Market streets, and, while its chartered route was on Market and Front streets, it had power to make a reasonable divergence (Rahn Township v. Street Ry., 167 Pa. 84), which it undertook to do by going on the other side of the same block, as expressly authorized by the city's franchise ordinance. The company's right to so diverge cannot be attacked in this collateral proceeding by the city which granted it that right, but only in a direct action by the Commonwealth (Olyphant Sewage Co. v. Olyphant Borough, 196 Pa. 553; Jordan v. Railway Co., 25 Pa. Superior Ct. 564), or, under the Act of 1871, by a private party whose rights are invaded: Gring v. Sinking Spring Water Co., 270 Pa. 232; Kane & E. R. R. Co. v. Pitts. &

W. R. R. Co., 241 Pa. 608; Western Pennsylvania Railroad Co.'s App., 104 Pa. 399.

Again, any right the city may have originally had to question the regularity of the company's use of Second Street has been lost by laches and acquiescence. It permitted such use to go unchallenged for thirty years, meantime collecting taxes from the company and otherwise treating it as properly occupying the streets. Meantime, also, the original company became merged with other companies, into an important system of electric railways whose greatest asset manifestly is the right to receive and discharge passengers at the business center of the City of Harrisburg. The city cannot at this late day successfully question the company's right in the street or the regularity of the franchise ordinance: Bradford's Tel. & Teleg. Co., 206 Pa. 582; Penna. R. R. v. Montgomery Co. Pass. Ry., 167 Pa. 62; Cent. D. & P. T. Co. v. Homer City Boro., 242 Pa. 597; Jordan v. Ry. Co., supra. To like import is Hagerstown v. Hagerstown R. Co., 123 Md. 183, reported with a comprehensive annotation in 7 A. L. R. 1239, 1248; and see 4 McQuillan on Municipal Corporations, section 1687, p. 3566; C. & N. W. Ry. Co. v. The People ex rel., 91 Ill. 251; Spokane St. Ry. Co. v. City of Spokane Falls, 33 Pac. 1072.

Section 14 of the Act of May 14, 1889, P. L. 211, 216, permitting one street railway company to use the track of another like company for a distance of five hundred feet (extended to twenty-five hundred feet by the Act of May 21, 1895, P. L. 93), does not apply to this case, because those acts are unconstitutional (Philadelphia, etc., St. Ry. Co.'s Petition, 203 Pa. 354; Com. v. St. Ry. Co., 203 Pa. 608), and because they never attempted to limit, nor does the law limit, the length of track which one company may acquire from another by lease. Appellant is not attempting to assert any rights here adverse to those of the Harrisburg Railway Company.

We cannot adopt the contention, so forcibly urged for appellees, that in any event appellant can bring into the

city such cars only as are limited to the original nine-mile line. This is not the meaning of the merger statutes. For example, the Act of May 15, 1895, P. L. 65, provides: "It shall be lawful for any traction or motor power company, or street passenger railway company, owning, leasing, controlling or operating different lines of street railways of different companies, to operate as a general system so much of said different lines as occupy streets, and from time to time to lay out such new routes or circuits over the whole or any part of such street or streets occupied by the tracks of the different companies which it thus owns, leases, controls or operates, and upon such routes or circuits to run cars for such distances, and in such directions, as will in the opinion of the operating company best accommodate public travel." That is broad enough to confer upon the merged company the right to run all of its cars over the entire line. By the merger, the constituent companies became one company with the right to run any or all its cars upon the entire line; without such right a merger would be vain. "A railroad company formed by the consolidation of several companies, and invested by law with all their property, rights, and franchises, is entitled to enjoy the franchises of each of its several companies upon the road originally belonging to it": 2 Morawetz on Private Corporations (2d ed.) section 947, p. 904. A city is the creature of the legislature (City of Worcester v. Street Ry. Co., 196 U. S. 539), and the latter may enlarge the powers of a public service corporation as against the former, except where the Constitution provides otherwise; hence, while such corporation, being a railway company, cannot enter the city without its consent, yet, such consent once given, the legislature may authorize the merger of such company with others and clothe the merged company with all the rights of the constituent companies as to the use of streets, etc. That is especially true here, as the franchise was given to the original company, its successors or assigns, with no limitation as to

the extent or manner of its use. If appellee's contention as to the limited use were sound, still the ordinance of 1923 would be invalid, for it prevents appellant's use of any cars on Second Street, as well those coming from Mechanicsburg as elsewhere. The authorities cited by appellees upon this question are not analogous to the instant case.

Treating appellant's occupation of Second Street as lawful on the facts in this case, the ordinance of 1923 is not a valid exercise of the city's police power. True, in accepting the franchise ordinance the company agreed to "subject itself to all regulations of the city now in force or hereafter made," but that must be construed reasonable regulations. What the 1923 ordinance attempts is not regulation but prohibition; for, as we have stated, its effect is to exclude appellant from Second Street, under conditions as they now are and have been for thirty years. A statute or ordinance to be valid under the police power must be reasonable: York Water Company v. York, 250 Pa. 115, 119; and see Mahoning & Shenango Ry. & Light Co. v. New Castle, 233 Pa. 413; Pennsylvania R. R. Co.'s Case, 213 Pa. 373. Regulation is not to be carried to the extent of prohibition: Jitney Bus Assn. v. Wilkes-Barre, 256 Pa. 462. The power to regulate is not a power to destroy. A limitation is not the equivalent of confiscation: Railroad Commission Cases, 116 U. S. 307, 331; Freund Police Power, section 63. The effect of the ordinance is to destroy appellant's Harrisburg terminal and cripple its line. If this may be done by preventing the cars from moving north on the west side of Second Street, under the rule of the road, there is no reason why the city may not make Walnut Street a one-way street and thus effectually shut appellant out of the city. The rule of the road as to keeping to the right cannot be applied to single-track railways upon the side of highways in such a manner as to entirely deprive the railway company of the use of the highway, and plaintiff by its lease acquired only the use of a single

track in Second Street, with no turnout. Appellee's contention is not supported by City of Easton v. Miller, 265 Pa. 25. That case did not attempt to exclude the railway company from any part of its chartered route, but merely required the railway company, in place of passing around the circle at the center of the city to the left, to follow the current of traffic and pass around to the right, a reasonable regulation. We there also hold, what has since been reaffirmed (Shamokin & Mt. C. T. Co. v. B. of Mt. Carmel, 268 Pa. 276), that the Public Service Act of July 26, 1913, P. L. 1374, does not deprive a city of its police power; neither can a city divest itself thereof by contract or otherwise.

Undoubtedly the traffic along the west side of Second Street, at the location in question, is unduly congested, caused in part by the presence and movement of plaintiff's cars and also in part by the temporary parking of automobiles thereon. The situation calls for relief, but the ninety-five-year lease is confined to the western track in Second Street and of necessity the cars of appellant and its predecessors ran both ways thereon; this the city fully understood and acquiesced in for thirty years and cannot now summarily prevent, especially as the franchise ordinance puts no limit on the manner of operating cars on either street. By the lease, the lessor, Harrisburg company, retained the right to make certain use of the west track, and were it now to grant appellant a right to use the east track for the northward movement of its cars the difficulty would apparently be solved.

We cannot, however, adopt the suggestion to defer passing upon the merits of this appeal, pending a decision by the Public Service Commission, upon an application which may be made to it to provide for an interchange of facilities between the street railway companies. True, "since the Public Service Company Law has been upon our books, we have consistently adhered to the rule that matters within the jurisdiction of the commission

must first be determined by it, in every instance, before the courts will adjudge any phase of the controversy": St. Clair Boro. v. Tamaqua & P. E. Ry. Co., 259 Pa. 462, 468; see also Pittsburgh Rys. Co. v. Pittsburgh, 260 Pa. 424; Bethlehem City Water Co. v. Bethlehem Boro., 253 Pa. 333; New Brighton Boro. v. New Brighton W. Co., 247 Pa. 232. The first of the cases just cited involved the question of fares, the second that of grade crossings, while the third and fourth turned on the right of a borough to extend its system of water works,—all matters expressly placed in charge of the Public Service Commission by the Act of July 26, 1913, P. L. 1374,—whereas the question involved in the instant case is the validity of a city ordinance regulating the movement of cars of a street railway company, a question we held in City of Easton v. Miller, supra, to be within equity jurisdiction, notwithstanding the Public Service Commission Law. And the other question, as to appellant's status in the street, is purely one of law and constitutional right, which the courts have to determine.

It must not be understood that we intend to hold the Commonwealth is powerless either directly or through one of its governmental agencies to regulate traffic on the highways where, through the operation of cars, they have or are clearly about to become a continuing menace to life and limb. The necessity and extent of such regulation and the agency to control it depend on the circumstances of each case. While the court below finds "several fatal accidents have occurred and a large number of lesser injuries to persons and considerable damage to property," our examination of the evidence shows that this finding is unwarranted. To effectually carry out the reserve police power mentioned in our Constitution in matters affecting public service companies, the Public Service Commission was created. And where, under circumstances such as those at bar, a corporation shares with another like corporation the exclusive privilege to occupy a street for railway purposes, the joint use

of the street should be regarded for purposes of regulation as though it were by a single company, and if such continued use proves unsafe, this agency, on application by the municipality or the railway affected, may require such rerouting of cars as will facilitate the general movement and proper public control of traffic on the highways. See section 17 of article V of the Act of July 26, 1913, P. L. 1374, also sections 1 and 7 of the same article as amended by the Act of March 23, 1921, P. L. 43.

We therefore reverse the decree of the court below, reinstate the bill and direct that an injunction issue, without prejudice to the right of the city or other party in interest to ask the Public Service Commission for relief; costs to be paid by the City of Harrisburg, appellee.

CONCURRING OPINION BY MR. CHIEF JUSTICE MOSCHZISKER:

The municipal ordinance recited in the majority opinion does not pretend to order the Valley Railways off Second Street, nor will it necessarily have that effect, for existing conditions, so far as appellant's use of its privileges in the street are concerned, may be entirely changed by the simple expedient of permitting it to run cars with the traffic on the other track. If the corporation with which appellant originally arranged for the privileges of the highway will not make some reasonable agreement for this apparently proper use, there are other means to that end. To my mind, the question now involved concerns the regulation of appellant's privileges, and I think the case presents a situation within the jurisdiction of the Public Service Commission; for, where, under circumstances such as those at bar, a corporation shares with another like corporation the exclusive privilege of occupying a street for railway purposes, I think the joint use of the street should be regarded for purposes of regulation as though it were by a single company; and if, in the course of time, the privilege, as employed, proves unsafe in the opinion of the munici-

pality, the latter, through the appropriate governmental agency, may require such rerouting of cars as will facilitate the general movement and proper public control of traffic on the highway, thus adding to the safety and adequacy of the service rendered: see section 17 of article V of the Act of 1913, P. L. 1414, and section 1 of article V of the same act, as amended by the Act of March 23, 1921, P. L. 43.

Paragraph S of article II, section 1 (page 1384), as amended by the Act of March 23, 1921, P. L. 43, to the effect that "no......street railway corporation shall be required to give the use of its tracks......to any other common carrier," does not control here, because that particular paragraph has to do with the subject of through routes, and these words, when taken with their context, really mean that the use of the tracks of one company cannot be given to another company for the purpose of forming a through route except, perhaps, as specially provided in the act: I think the words above quoted do not contemplate, or comprehend, a situation such as the one presented at bar, where an operating company is already making some use of the tracks of another railway company, and the question is as to the regulation of that use in the public interest.

My thought is: The Public Service Commission having jurisdiction, we should not at this time decide as to the validity of the ordinance involved, but should stand by what is stated in St. Clair Boro. v. Tamaqua, etc., 259 Pa. 462, 468, where we said: "Since the Public Service Company Law has been on our books we have consistently adhered to the rule that matters within the jurisdiction of the commission must first be determined by it in every instance before the courts will adjudge any phase of the controversy: Bethlehem City Water Co. v. Bethlehem Boro. (No. 2), 253 Pa. 333, 337-8; New Brighton Boro. v. New Brighton Water Co. et al., 247 Pa. 232, 240, 241, 242." Also see Pittsburgh Rys. Co. v. Pittsburgh, 260 Pa. 424, 427, where, speaking of the Public Service Company Act, we said: "Since the

act......has become part of our statute law......the courts have no jurisdiction to consider or adjudge the issues involved until they come to them on appeal"; and where, in an equity case, we further said that, after deciding the Public Service Commission had jurisdiction, the proper practice was "to grant such an injunction as would maintain the status quo and afford defendant municipality an opportunity of petitioning for due authority to proceed with its contemplated [plan]." Fogelsville, etc., Co. v. Penna., etc., Co., 271 Pa. 237, 245, is a case where an order to maintain the status quo was entered.

The reasonableness of the ordinance in controversy necessarily depends on the facts to which it is to be applied, and these may be fixed by a proper order obtained under the system of regulation we now enjoy. Should the Public Service Commission make an order enabling the Valley Railways Company to maintain its service on Second Street, under conditions consistent with both the company's franchise rights and the terms of the ordinance, the application of the latter to such circumstances might, and probably would, be adjudged entirely reasonable. On the other hand, should no such relief be granted by the commission, or otherwise obtained, the reasonableness of the ordinance would then be open to question. Whatever the outcome, all points of law may be raised and determined on appeal after the commission has considered the matter. In the meantime, according to my idea, an order should be made reversing the court below, reinstating the bill, and directing it to grant a preliminary injunction to maintain the status quo, so that the municipality, or any of the corporations concerned, may file an application with the Public Service Commission, along the lines above indicated; but I would not at this time decide, or express any view on, many of the points of substantive law determined in the majority opinion.

Mr. Justice SIMPSON concurs in this opinion.