# The American Telephone and Telegraph Co. of Pennsylvania v. Mifflintown Borough.

*John R. Guyer, Paul G. Smith, Rufus C. Elder* and *George J. Parker,* for plaintiff; *J. Howard Neely,* for defendant.

BARNETT, P. J., December 20, 1930.—The plaintiff, a telephone and telegraph company, alleging that with municipal consent it has for many years past occupied Main Street of the defendant borough with its poles and wires, complains that the defendant has recently, by ordinance, required the plaintiff to remove its poles and wires from the said street and prays that such ordinance may be adjudged to be invalid and that the defendant be enjoined from enforcing or attempting to enforce said ordinance and from removing or attempting to remove the plaintiff's poles and wires from the said street.

### Findings of fact.

1. The American Telephone and Telegraph Company of Pennsylvania is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, under date of Jan. 13, 1885, for the purpose of constructing, maintaining and leasing lines of telegraph wire for private telegraphic and telephonic use of individuals, firms, corporations, municipal and otherwise, for general telegraphic and telephonic business, for police, fire alarm or messenger service and for the transaction of any business in which electricity over and through wires or other electrical conductors may be applied to any useful or experimental purpose with all the rights and powers in the acts of assembly granted, from, among other places, Easton to Pittsburgh and the western state line, with extensions and branches to other cities and towns in the State of Pennsylvania, and in practically all of the counties of the Commonwealth of Pennsylvania, including the County of Juniata.

2. The Borough of Mifflintown is a borough organized and existing under the laws of the Commonwealth of Pennsylvania and located in Juniata County, Pennsylvania.

3. On or before July 24, 1891, the plaintiff desired to construct its line of telephone or telegraph wires as authorized across the Commonwealth of Pennsylvania from Easton to Pittsburgh and westwardly to the state line, in which construction it became necessary to pass through the defendant borough.

4. For so doing the plaintiff made due application to the municipal authorities of the Borough of Mifflintown for permission to erect poles and run wires on the same over the streets, lanes and alleys of the said borough, including Main Street in that borough.

5. Thereupon the said Borough of Mifflintown, by an ordinance duly enacted and approved on July 24, 1891, a copy of which is to the bill attached and marked "Exhibit A," granted permission to the plaintiff to erect poles and wires upon the streets and alleys of the said Borough of Mifflintown, including Main Street, as by reference thereto more particularly appears, upon condition, among other things, that the plaintiff would replace the surface of the roadway in as good condition as it then was, and upon further condition that the lines should be constructed and completed within one year from the date of Aug. 1, 1891, except for the purpose of adding extra wires and cross-arms to the line constructed within that period.

6. The said Ordinance of July 24, 1891, and the rights therein conferred were duly accepted by the plaintiff, and the said construction was completed within the said one year, and the plaintiff replaced the surface of the roadway in as good condition as prior to said construction.

7. Acting under the authority of the ordinance and with the consent, acquiescence and approval of the defendant, the plaintiff did then erect its poles within the limits of the roadway of Main Street in the said borough and at the points acquiesced in by the municipal authorities, and has since that time there maintained the same.

8. In so doing, the plaintiff constructed within the limits of the borough, and since that time has maintained, and now has in the said Main Street, ten poles, Nos. 10049 to 10058, both inclusive, each of which carries forty-two wires, and eleven poles, Nos. 10058 to 10068, both inclusive, each of which carries forty-eight wires, the entire length of its line along said Main Street being approximately 2000 feet. The investment of the plaintiff company in the said line and facilities thus located represents an original construction cost of approximately $1200. This sum, however, does not include the work of maintenance and reconstruction of the said line, on which the plaintiff has expended, in addition, the sum of approximately $6500.

9. While these sums of money were spent on lines within the limits of the defendant borough, the line in question is but a very small fractional part of the entire line of the plaintiff, extending across the Commonwealth of Pennsylvania from Easton, through Pittsburgh, to the western line of the Commonwealth of Pennsylvania and elsewhere, in which construction the plaintiff has expended in the whole many millions of dollars.

10. The line in question, including the whole line across the Commonwealth of Pennsylvania, is a part of the main transmission line of the plaintiff used for long distance service from the City of New York and from points eastward to Boston and throughout the New England States, and westwardly through the various cities of the middle west and on to the City of Chicago, where it connects with main lines and trunk lines westwardly to the Pacific coast and is used in transcontinental service. The lines over which the service is rendered without the Commonwealth of Pennsylvania are owned and controlled by the companies affiliated with the plaintiff or with which it has traffic arrangements.

11. The line in question carries a maximum of forty-eight wires, arranged for both telephone and telegraph purposes, and all of these wires are in continuous service for twenty-four hours a day and carry messages continuously to all parts of the United States, Canada and other foreign countries.

12. Under date of Sept. 4, 1929, the Borough of Mifflintown enacted an ordinance, No. 77, a copy of which is to the bill attached and marked "Exhibit B," under which it required, among other things, the plaintiff to repair and maintain in good order all poles in the line of the work of reconstructing the surface of the highway on Main Street in the said borough, with the provisions of which the plaintiff asserts its willingness to comply.

13. Under date of Feb. 19, 1930, the Borough of Mifflintown has attempted, by ordinance, a copy of which is to the bill attached and marked "Exhibit C," to designate Main Street of the said borough, from house line to house line, as a district or area within which no poles or wires of any public service company, including the plaintiff, may be erected or maintained after July 30, 1930, and requiring, among other things, the plaintiff to remove its said line of poles and wires from the said district by that date, and providing a penalty of $5 per day for each and every pole erected, maintained or otherwise remaining within the said district after July 30, 1930.

14. Said Main Street is the principal street of the defendant borough, running through its entire length from north to south. It is a continuation of the main highway route along which, in connection with its use of this street, the plaintiff's lines have since their original construction been located.

15. There is no other street or alley running through the borough from north to south which is available or practicable for the location of this line.

16. On the western side of Main Street, beginning near the northern borough line, there diverges westwardly to a distance of about a block a street or road, known as Front Street or Water Street, which extends to the southern borough limits. To relocate plaintiff's line on this street will require at least four poles on Main Street. On the western side of Water Street, for a part of the distance, there is located a 22,000-volt power line, and for another part of its distance a 2300-volt power line. To locate the telephone line on the same side of Water Street would expose it to inductive interference, as well as create physical construction and operating hazards. To locate it upon the eastern side of Water Street would require the trimming and cutting of large shade trees, even though 50-foot poles are used, and the construction of one 300-foot span.

17. On the eastern side of Main Street there is no street or alley which is open from the northern borough line to the southern borough line, so that to occupy any such street or alley the plaintiff would be required to cross private property. North Street, which intersects with Main Street, and is the most northern cross-street of the borough, is about 375 feet south of the northern borough line, so that to enter it would require 375 feet of the line to be located on Main Street. If a parallel street or alley to Main Street on the east is to be used, Third Street is not open to the southern limits, nor is the 15-foot alley east of Third Street, but from the southern ends of this street and alley there is a distance of about 300 feet of private property, which it would be necessary to cross to reach Cedar Spring Road, which is a cross-street at the southern line of the borough.

18. The defendant borough notified the plaintiff on the hearing of this cause that it would not consent to plaintiff's installing its line of poles and wires on either Third Street or Front Street, sometimes known as Water Street, south of Orange Street.

19. The defendant borough, after bill and answer filed and three days before the hearing thereon, by resolution passed June 11, 1930, has suggested to plaintiff two alternative routes through the said borough for the purpose of relocating and removing its said line of poles and wires from Main Street.

20. Alternative route No. 1 thus suggested by defendant is as follows:

From the Cedar Spring Road, being the southern limit of the said borough, thence north by the alley east of Third Street (if the same be a public alley throughout) to the northern borough line, or, in the event that the same is not a public alley throughout, from said Cedar Spring Road thence north by the property of Roscoe North, Dr. W. H. Banks and Marlin O. Potter, and thence by Third Street alley to the northern borough line.

21. Said alternative route No. 1 would require plaintiff to build approximately 3875 feet of new line. Of this, approximately 450 feet would be on the Cedar Spring Road and paralleling a 22,000-volt line of the Pennsylvania Power and Light Company; approximately 300 feet thereof over private lands; approximately 1925 feet thereof on and along said alley east of Third Street, which alley is not over 16 feet wide, and on which for a part of this distance there is now located a 2300-volt line of the Pennsylvania Power and Light Company; and approximately 1200 feet thereof over private lands north of the defendant borough.

22. Said alley east of Third Street does not connect, either at its northern or southern end, with any public highway. To be available to the plaintiff at its southern end rights of way of approximately 300 feet over the lands of Roscoe North, Dr. W. H. Banks and Marlin O. Potter will have to be purchased. At the northern end, to reconnect with plaintiff's present line of poles and wires on the William Penn Highway north of said borough, a right of way of approximately 1200 feet will have to be purchased from Wilberforce Schweyer.

23. At the hearing a modification of alternative route No. 1 was suggested and discussed in the testimony. The modified route leaves the said alley at North Street and proceeds on North Street to Main Street, there to connect with the plaintiff's present line. This route would avoid the necessity for the purchase of 1200 feet of right of way at the nothern end, but it presents the structural difficulties involved in two right-angle turns, one at the alley and North Street and the other at North Street and Main Street, and also requires the continued occupation of that part of Main Street between North Street and the northern borough line, which is forbidden by the ordinance of which the plaintiff complains.

24. Alternative route No. 2, suggested by the said resolution, is as follows:

From the Cedar Spring Road, thence north over the property of the Mifflin Creamery Company by the alley west of Main Street to the garage property of R. Louis Bousum, thence northwest over the property of the said Louis Bousum to the public alley between Main and Front Streets of the said borough, thence northwest to Front and Orange Streets of the said Borough of Mifflintown, and thence north by Front Street extended to the present line of poles of the American Telephone and Telegraph Company on the William Penn Highway.

25. Said alternative route No. 2 would require plaintiff to build approximately 2425 feet of new line. Of this, approximately 450 feet would be on the Cedar Spring Road and paralleling a 22,000-volt line of the Pennsylvania Power and Light Company; approximately 525 feet thereof over private lands and buildings; approximately 600 feet thereof on and along said alley west of Main Street, which alley is not over 16 feet wide, and on which for

this entire distance there is now located a 2300-volt line of the Pennsylvania Power and Light Company; approximately 350 feet thereof on and along Front Street, on which for a part of this distance there is now located a 2300-volt line of the Pennsylvania Power and Light Company; and approximately 425 feet thereof on Main Street.

26. For said alternative route No. 2 to be available to the plaintiff, at the eastern end thereof, a right of way over the lands of the Mifflin Creamery Company, or J. W. Gaul, approximately 300 feet long, will have to be purchased by the plaintiff. North of Lemon Street this proposed route goes over lands of Louis Bousum, on which is erected a one-story garage, thence across an alley known as Kauffman's Alley, and thence across private lands, on which are erected two-story buildings. Plaintiff's wires would also have to be carried over these structures, and rights of way of upwards of 225 feet in length would have to be purchased by the plaintiff for this purpose. And on this route would have to be maintained at least four poles within the house lines of Main Street north of Front Street to the northern borough limit.

27. To locate plaintiff's line of poles and wires on streets and alleys on which are also located power lines would expose plaintiff's line to inductive interference as well as create other construction and operating hazards and difficulties.

28. To relocate plaintiff's line of poles and wires on either of the two suggested alternative routes or on any other street than Main Street would require a number of right-angle turns, resulting in a weakening of the line. In such construction, as well as in the relocation of the line, it would become necessary to secure extensive privileges for guying and anchoring on private property; and to re-route this line through the borough on any other street or alley, even if it were possible to do so, would require the expenditure of approximately $5000, exclusive of rights of way required to be purchased from private owners.

29. The said line of poles and wires was erected by the plaintiff within the limits of Main Street in the defendant borough with the acquiescence, consent and approval of the municipal authorities of said borough and without any protest or objection on its part, and has been thus located and maintained for a period of approximately thirty-nine years. During this period the defendant has stood silently by while the plaintiff, in reliance on the consent ordinance of July 24, 1891, made expenditures of approximately $7700 in the construction, maintenance and renewal of said line. Further, the defendant has during part of this time assessed against plaintiff, received and duly receipted for pole taxes thereon.

30. The plaintiff company heretofore has complied with all the reasonable rules and regulations adopted by the defendant with regard to the location, construction and maintenance of poles and wires on said Main Street.

31. The plaintiff company declares its willingness, now and at all times, to comply with all reasonable rules and regulations with regard to location, construction and maintenance of said line of poles and wires on said Main Street as the defendant borough may adopt or propose.

### Discussion.

The plaintiff company having requested of the council of the defendant borough permission to erect and maintain its line of poles and wires upon the streets and alleys of the borough, the council, on July 24, 1891, in the presence of a representative of the company, enacted an ordinance granting the requested permission. A copy of this ordinance, certified by the president

of the council, attested by its secretary, was immediately delivered to the company's representative. The ordinance was transcribed in full upon the minutes of the council. On the part of the borough, it is contended that the ordinance was incomplete and never legally effective to bind the borough, because it was not approved by the burgess, was not advertised and never was recorded in the ordinance book. The company replies that at the date of the enactment of the ordinance the approval of the burgess was not essential to its validity; that the ordinance is ministerial rather than legislative in character, and became effective without the advertisement and recording required to give validity to a legislative act. Respecting the latter question, the Supreme Court has said in Jones v. Schuylkill Light, Heat and Power Co., 202 Pa. 164, 166, and repeated in Eddy v. Ashley Borough, 281 Pa. 4, 9 (see, also, Miller v. West View Borough, 57 Pa. Superior Ct. 14, 17, and cases there cited), that "Generally . . . permanent regulations for the government of the borough, the granting of privileges to occupy streets, and the creation of liability by contract" are held to be legislative acts. In Farmers' Mutual Telephone Co. v. Middleboro Borough, 25 Dist. R. 256, Judge Walling, now a Justice of the Supreme Court, expressed his belief that the consent of municipal authorities to the entry of the streets of a borough by a telephone company "is rather in the nature of a ministerial than of a legislative act." But this opinion was not an essential step to the decision in that case, that while a borough may impose conditions, it has no right arbitrarily to refuse to grant such consent, and may be compelled by mandamus to do so. The granting of the consent, a duty imposed upon the council, in the absence of reasonable grounds for refusal, by the Act of June 25, 1885, P. L. 164, may be merely ministerial, since it is thus made obligatory, but the fixing of the conditions of occupation of the streets, permanent in their nature, would seem to be legislative; and the statute which requires that the permission, and the conditions and regulations accompanying it, "shall be given by ordinance only," seems to imply a legislative act. The ordinance upon which the plaintiff relies was adopted prior to the passage of the Act of May 23, 1893, P. L. 113, requiring that every ordinance and resolution passed by a borough council shall be presented to the chief burgess for his approval. The special Act of March 6, 1833, P. L. 63, by which the defendant borough was incorporated, contains no such provision. Paragraph IV, section 6, of the Act of April 3, 1851, P. L. 320, made it the duty of the chief burgess "to sign the several by-laws, rules, regulations and ordinances adopted, after they shall have been duly and correctly transcribed by the secretary," but he was not given the power of veto, and his signature was apparently merely a ministerial act: Cessna v. Clouse, 52 Pa. Superior Ct. 442, 444. It has not been shown that the defendant borough ever adopted the Act of 1851.

It is unnecessary, however, to decide whether or not the ordinance in question is technically invalid because of any of the alleged defects and omissions in its enactment. It is certain that the plaintiff company, relying upon the ordinance as its authority, entered upon Main Street and there erected its poles and strung its wires with the full acquiescence of the borough officials; that for thirty-nine years it has maintained its line on said street with like acquiescence, and in such erection and maintenance has expended many thousands of dollars; that the borough as late as the year 1929, and for at least fifteen years next preceding, assessed and collected a tax on the poles of the plaintiff's line. Under these circumstances, the defendant is estopped from denying the validity of the ordinance which first permitted the plaintiff's entry upon the street: Valley Rys. v. Harrisburg, 280 Pa. 385, 394; Central

District and Printing Telegraph Co. *v.* Homer City Borough, 242 Pa. 597, 600; Allegheny County Light Co. *v.* Booth, 216 Pa. 564, 571; Bradford *v.* New York and Pennsylvania Telephone and Telegraph Co., 206 Pa. 582, 586. The laches of the defendant borough has vested in the plaintiff a right to occupy Main Street with its poles and wires, as it has done for the past thirty-nine years, as full and complete as if granted originally by an unquestionably valid ordinance. It is argued for the defendant that while a borough may be estopped by laches from denying a railway company the right to occupy its streets, the principle does not apply in case of a telephone company because of difference in constitutional or statutory requirements for the precedent consent of the borough. We can find nothing in any of the cases upon the subject on which to found such a distinction, and can see no reason for it. In Bradford *v.* New York and Pennsylvania Telephone and Telegraph Co., *supra*, the rule was invoked by the Supreme Court in favor of a telephone company.

What are the rights of the company, what are the powers of the borough, with respect to the former's occupation of Main Street? That its occupation is subject to reasonable regulation is clear under the authorities and is conceded by the plaintiff. But, subject to such reasonable regulation, the plaintiff has a vested right in the street. When the Ordinance of 1891, the validity of which the defendant is now estopped to deny, was accepted by the plaintiff, and under its authority plaintiff's line was located upon Main Street, an irrevocable contract resulted which neither party to it may violate: Valley Rys. *v.* Harrisburg, 280 Pa. 385, 392; Hestonville, etc., R. R. Co. *v.* Philadelphia, 89 Pa. 210, 218, 219; Grand Trunk Western Ry. Co. *v.* South Bend, 227 U. S. 544, 555, 57 L. Ed. 633, 640; 3 Ann. Cas., 88, *et seq.;* Ann. Cas., 1915 A, note, 899, *et seq.* This right of occupation cannot be taken from the plaintiff under guise of regulation. The borough's conceded power to regulate is not a power to destroy: Valley Rys. *v.* Harrisburg, 280 Pa. 385, 396. "The power to regulate implies the existence, and not the destruction, of the thing to be controlled:" Grand Trunk Western Ry. Co. *v.* South Bend, *supra*. The effect of the Ordinance of Feb. 19, 1930, is not to regulate but to destroy the plaintiff's right to the use of Main Street, the right granted by the defendant and accepted by the plaintiff under the 1891 Ordinance. The defendant contends that this eviction is not an unreasonable exercise of the municipal power, because it has been followed by a tender of the choice of any one of three alternative routes. Of the numerous cases cited in support of this argument, however, not one sustains the proposition it involves, that municipal power to regulate a service company's use of a street may be magnified into a power to substitute another street for the one used, and our own independent research convinces us that no such power of substitution exists. Very recently, in Philadelphia Electric Co. *v.* Philadelphia, 301 Pa. 291, 301, the Supreme Court said: "The franchise, and not the particular location, is the essence of the contract, and the city under its power to regulate might compel, for instance, a railway company to remove its tracks from the center to the side, or from the side to the center of the street: Grand Trunk Western Ry. Co. *v.* South Bend, 227 U. S. 544, 553." But neither that court nor any other, so far as we can learn, has ever held that the municipality may revoke the franchise itself, "the essence of the contract," and justify the seizure by offering as a palliative "something just as good." In a dissenting opinion filed in the case last cited Mr. Justice Kephart, going somewhat farther than the majority of the court in defining the

service company's right in the street, said: "When appellee secured its charter from the State, the consent of the city to occupy its streets, and the actual occupation thereof, it acquired a substantive property right therein (Russell v. Sebastian, supra [233 U. S. 195]; Boise Water Co. v. Boise City, 230 U. S. 84, 90, 91; Louisville v. Cumberland Telephone Co., 224 U. S. 649, 663, 664) which could not be withdrawn, altered or modified: Russell v. Sebastian, supra; Hestonville, etc., R. R. Co. v. Philadelphia, 89 Pa. 210; Grand Trunk Ry. Co. v. South Bend, supra." It is manifest that the alternative routes suggested by the defendant borough are all inferior to the one now in use by the plaintiff company. The mere change from the present route to another would involve heavy expense; rights of way over private property would have to be acquired; the unopened portions of the alley east of Third Street, although they appear as thoroughfares upon the borough plan, are still the property of the owners of the abutting lands (see Bender v. Akron Borough, 14 D. & C. 305) from whom the plaintiff would be obliged to purchase rights of way; the undesirability of proximity to high-power electric lines and the engineering difficulties involved in turning at a right angle a telephone line carrying half a hundred wires are obvious even to a layman. We are unable to conclude from the evidence that a reasonable substitute has been offered for the franchise which the ordinance attempts to revoke. In our opinion, however, the question of reasonableness is not involved. The question is whether, upon any terms, reasonable or otherwise, which the plaintiff company does not accept, the borough may repudiate the contract of 1891 and revoke the plaintiff's franchise in the street. We are forced to the conclusion that it may not.

Whether or not the wires of the Bell Telephone Company are rightfully maintained upon the plaintiff company's poles cannot be determined from the evidence before us and is not an issue in the case. Certainly, the borough, which has for years silently permitted their maintenance, cannot use the fact now as a justification for the ousting ordinance. The borough has ample power to require the plaintiff company to keep its poles in the condition originally required by the Ordinance of 1891, but that power does not extend to revocation of the contract which the ordinance offered and which the company's acceptance made complete and inviolable.

### Conclusions of law.

1. Defendant's consent ordinance of July 24, 1891, duly accepted and acted upon by the plaintiff when it built its line of poles and wires on Main Street pursuant thereto, became an irrevocable contract and property right protected by the Constitution, the terms of which the defendant may not violate or impair and subject only to a reasonable exercise of its police power.

2. The facts, if such they be, that the Ordinance of 1891 was not transcribed in the ordinance book, or signed by the burgess, or advertised, do not affect the validity of the consent given, in view of the fact that the plaintiff, relying upon the ordinance, entered upon the streets with its poles and wires and has since occupied the same with municipal acquiescence and consent.

3. The contract between the plaintiff and the defendant, evidenced by the consent ordinance of 1891, and the defendant's acquiescence in the erection and maintenance of the plaintiff's line, cannot be revoked by entirely excluding the plaintiff's said line of poles and wires from Main Street.

4. The defendant borough may not under the guise of regulation withdraw a franchise conferred by it on plaintiff or establish conditions that make its reasonable use and enjoyment impossible.

5. The plaintiff has a vested right to occupy Main Street with its line of poles and wires subject only to reasonable regulation and control by the municipal authorities as to the manner of such occupation.

6. The action of the defendant in passing or attempting to enforce the Ordinance of Feb. 19, 1930, is unwarranted and unauthorized by law and is an unlawful interference with the charter and property rights of the plaintiff.

7. The defendant should be enjoined and restrained, by itself, its officers, agents or employees, from enforcing or attempting to enforce the Ordinance of Feb. 19, 1930, requiring the plaintiff to remove its lines of wires and poles from Main Street in the defendant borough and from exacting or attempting to exact or collect any fines, penalties or forfeitures for failure on the part of the plaintiff to remove the same.

### Decree.

And now, Dec. 20, 1930, the prothonotary is directed to enter a decree *nisi*, enjoining and restraining the defendant, the Borough of Mifflintown, its officers, agents and employees, from enforcing or attempting to enforce the Ordinance of Feb. 19, 1930, requiring the plaintiff, The American Telephone and Telegraph Company of Pennsylvania, to remove its lines of wires and poles from Main Street in the said Borough of Mifflintown, and from exacting or attempting to exact or collect any fines, penalties or forfeitures for failure on the part of the said plaintiff to remove the same.

From J. N. Keller, Mifflintown, Pa.