# Mahoning & Shenango Railway & Light Company, Appellant, v. New Castle.

*Equity—Injunction—Jurisdiction—Ordinance—Police power—Street railway—Threat to arrest employees—Municipalities.*

1. Equity has jurisdiction to interfere by injunction against a municipality where the validity of a police power ordinance is in question, and there is a threat to take the employees of a street railway company off its cars by arrest.

*Municipalities—City of the third class—Penal ordinances—Regulation of common carriers—Standard of care—Safety devices—Powers.*

2. In the absence of express authority conferring the power of enactment such a penal ordinance as one purporting to regulate the safety devices to be adopted by a street railway, which undertakes to enforce a higher standard than that imposed by the principles of common law, should not be sustained.

3. An ordinance of the city of New Castle, a city of the third class, required all companies operating street railway lines in the city to equip every car operated with "the latest, best and most approved safety brakes," and specified by name two kinds of brakes to be used, with provision for fine or imprisonment for violation of the ordinance. On appeal from a decree dismissing bill praying for an injunction declaring the ordinance invalid, *held*, that there is nothing in the Act of February 25, 1869, P. L. 249 (incorporating the city of New Castle), in the Act of May 16, 1901, P. L. 224, or in the Act of March 22, 1887, P. L. 8, which confers upon the city the express right to enact such an ordinance; nor has the city any incidental or implied power which would enable it to do so.

*Railroads—Operation of road—Duty to protect public—Board of directors.*

4. In the operation of its road and in the running of its cars the judgment of the board of directors of a railroad company, in the absence of statutory provision, is supreme and exclusive. The public safety imperatively requires that there be no division of this great responsibility with others, not even municipalities. What particular means shall be employed to protect the public is left to the company, the law merely demanding and requiring reasonable care.

Argued Oct. 10, 1911. Appeal, No. 31, Oct. T., 1911, by plaintiff, from decree of C. P. Lawrence Co., June T.,

1909, No. 5, in Equity, dismissing bill in suit of Mahoning & Shenango Railway & Light Company v. City of New Castle, Harry J. Lusk, Mayor, and Joseph Gilmore, Chief of Police. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity to restrain the enforcement of and to declare invalid a municipal penal ordinance requiring a street railway company to use the latest, best and most approved safety brakes and specifically designating that certain brakes shall be used until some better one is devised. Before PORTER, P. J.

At hearing the ordinance was determined to be valid, and the bill was dismissed.

It appears from the evidence and findings of the court below that the city of Newcastle is a city of the third class; that the plaintiff company is a traction or motor-power company incorporated under the Act of March 22, 1887, P. L. 8, running cars upon the streets of the defendant city, in which there are some steep grades; that the plaintiff operates four double-truck cars, twenty-six single-truck cars and a number of trailers, the last mentioned having no motor or other power; that the weight of the single-truck cars is from nine to twelve tons each; that the speed limit fixed by ordinance in said city is eight miles per hour; that the plaintiff's cars are all equipped with a hand brake and a reverse of the usual pattern, and with a fender which increases the efficiency of the hand brakes; that the double-truck cars have in addition to the hand brake an air brake of the character required by the ordinance in question; that it is impracticable to install in the single-truck cars the apparatus necessary for the operation of the air brake required by the ordinance; that the hand brake is the safety appliance in most common use and most generally approved for braking or stopping street railway cars; that the magnetic brake required by said ordinance can be used in

connection with the hand brake and adds to the safety of operating cars, but that the magnetic brake "cannot be said to be in general use;" that this latter brake is known as the Westinghouse magnetic brake, and appears to be the only brake that can be used on single-truck cars in connection with the hand brake, "unless the reverse should be regarded as a power brake;" that the reverse is not as good as the magnetic brake; that the latter is a good additional safety brake in emergencies, in that it enables a car to stop more quickly, and if in order can be used to advantage in the winter time and also in going down hills; that it is impracticable to install and operate either the magnetic or air brake on the trailer cars; that for about two years the plaintiff's cars were equipped with magnetic brakes in addition to the hand brakes, but in 1907 their use was discontinued as unsatisfactory, and since that time they have used only the hand brake and the reverse; that "since the magnetic brake has been removed fewer accidents have resulted from the operation of the cars."

*Errors assigned* were: Dismissal of certain exceptions to the conclusions and decree of the court below raising the several questions discussed in the opinion of the Supreme Court.

*C. H. Akens,* of *Akens, Wilkinson, Lockhart & Chambers,* for appellant.—Police powers of municipalities are conferred powers: Com. v. R. R. Co., 27 Pa. 339; Com. v. Warwick, 185 Pa. 623; Whelen's App., 108 Pa. 162; Penna. R. R. Co.'s Case, 213 Pa. 373; Lesley v. Kite, 192 Pa. 268; Conshohocken Borough v. Conshohocken Ry. Co., 206 Pa. 75; Kneedler v. Norristown Borough, 100 Pa. 368; Williamsport v. Com., 84 Pa. 487; Schroeder v. Gas & Water Co., 20 Pa. Superior Ct. 255.

The authority assumed is to control the discretion of the directors of the company and thus control the style of brakes. There is no such authority conferred by law:

Penna. R. R. Co.'s Case, 213 Pa. 373; Chester v. Traction Co., 4 Pa. Superior Ct. 575.

One is not required to have machinery or appliances of the "latest, most improved or best type:" Buente v. Traction Co., 2 Pa. Superior Ct. 185; Glenmont Lumber Co. v. Roy, 126 Fed. Repr. 524; Westinghouse Electric & Mfg. Co. v. Heimlich, 127 Fed. Repr. 92; Wabash R. R. Co. v. Burress, 111 Ill. App. 258; Buttner v. Steel Car & Foundry Co., 101 Md. 168 (60 Atl. Repr. 597); Phila. & R. R. R. Co. v. Hughes, 119 Pa. 301; Rummell v. Dilworth, 111 Pa. 343; Augerstein v. Jones, 139 Pa. 183.

While the company must adopt machinery and appliances to secure ordinary and reasonable safety to other users of the streets, the particular means or apparatus to so protect the public is left to the company operating the road, the law merely demanding and requiring reasonable care in view of all the circumstances: Seifred v. Railroad Co., 206 Pa. 399; Pennsylvania R. R. Co.'s Case, 213 Pa. 373; Lehigh Valley R. R. Co. v. Brandtmaier, 113 Pa. 610.

The question of jurisdiction in such cases was expressly mooted and decided against the city's contention in Bryan v. Chester, 212 Pa. 259.

*James A. Gardner*, city solicitor, for appellee.—The city of New Castle had the power to pass the ordinance in question; for as a municipal corporation it possesses and can exercise the power: Lesley v. Kite, 192 Pa. 268; Hazleton v. R. R. Co., 11 Pa. Dist. Rep. 644; McKeesport v. Ry. Co., 2 Pa. Superior Ct. 242; Pennsylvania Co. v. James, 81 * Pa. 194; Montgomery City Council v. Parker, 114 Ala. 118 (21 So. Repr. 452).

An injunction will not lie to prevent the enforcement of an ordinance where the same is not void, or where the same does not affect property rights, and where there is an adequate remedy at law: Burnett v. Craig, 30 Ala. 135; 68 Am. Dec. 115; Poyer v. Des Plaines, 123 Ill. 111;

5 Am. St. R. 494; McLaughlin v. Jones, 3 W. N. C. 203; Atlanta v. Gates City Gas Lgt. Co., 71 Ga. 106; Brennan v. Sewerage & Water Board, 108 La. 569 (32 So. Repr. 563); Des Plaines v. Poyer, 123 Ill. 348.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1912:

This was a proceeding in equity for an injunction to restrain the defendants from arresting the motormen and conductors in charge of the plaintiff's cars or from in any other manner enforcing the provisions and penalties of a certain municipal ordinance.

The ordinance was approved November 30, 1908, and required all companies operating street railway lines in the city of Newcastle, (sec. 1) to "equip each and every car operated . . . . with the latest, best and most approved safety brakes;" (sec. 2) "until some better or more practical brake or device is made for the purpose of braking or locking cars . . . . to equip each of their respective cars with the kind of brake known as the magnetic brake . . . . the said brake to be the same or similar to those which were recently used by the Mahoning & Shenango Railway & Light Company . . . . in said city, or an air brake similar to those now in use on the Inter-Urban lines now entering the city, the said brake or brakes to be in addition to the hand brakes with which each car shall be equipped;" and (sec. 3) that upon conviction of any violation of the ordinance a fine shall be imposed of not less than $10 or more than $100 and costs of suit; and upon refusal to pay, imprisonment not exceeding thirty days, with an allowance of execution process to collect fines and costs from corporations.

The court below decided that the ordinance was valid excepting in so far as it required the trailer cars to be equipped with the brakes designated; that if the plaintiff was affected it had an adequate remedy at law; and that equity had no jurisdiction to grant the relief prayed for. A decree was entered dismissing the bill.

It was the threat to take the employees of the plaintiff company off its cars by arrest which caused the filing of the bill. Had this threat been carried out it would have meant the tying up of the plaintiff's lines and a serious interference with the use of its property. Under such circumstances, if the ordinance was invalid, there was ample authority to sustain equitable interference. In Bryan v. Chester, 212 Pa. 259, where the validity of a police power ordinance was in question, it was contended, upon practically all of the grounds now urged, that equity had no jurisdiction and should not interfere. But we said, "There can be no doubt that this proceeding was properly instituted;" and we sustained an injunction decree declaring the ordinance invalid.

There is nothing in the Act of February 25, 1869, P. L. 249 (incorporating the city of New Castle), in the Act of May 16, 1901, P. L. 224 (to amend the act of May 23, 1889, as to cities of the third class), or in the Act of March 22, 1887, P. L. 8 (for the incorporation and regulation of motor power companies), which confers upon the defendant city the express right to enact an ordinance in the terms of the one in this case; nor had the city any incidental or implied power which would enable it so to do.

In constructing and maintaining its streets, a city is not bound to adopt the latest and best devices: Canavan v. Oil City, 183 Pa. 611; and yet that is the standard of public duty which the defendant city attempts to set for the plaintiff company; and more than this, by designating what the latter must use as the latest and best safety brakes, the ordinance assumes to declare how the company shall perform this duty. In the absence of express authority conferring the power of enactment, a penal ordinance such as the present, which undertakes to enforce a higher standard than that imposed by the principles of the common law, should not be sustained; if a new and different one is to be set, the legislature should act. Aside from the strictly legal aspect, it is apparent

that if such minute regulation is to be attempted at all, it is far better that the matter shall be under state control; for if each municipal subdivision be permitted to prescribe the particular kind of safety brakes to be used by cars passing through its territory, since there is no guarantee that the judgment of the different authorities will accord, the important development of connecting trolley lines as competitors of the railroads, which has added so much to the comfort and convenience of the traveling public, will be seriously handicapped if not practically brought to a standstill.

However, it is not necessary to theorize upon the subject in hand, for no matter what the law may be in other jurisdictions the controlling principles have been settled in this state. In The Pennsylvania Railroad Company's case, 213 Pa. 373, this court squarely ruled against the validity of an ordinance of the character of the one under consideration. We there said, "The question raised on this appeal is as to the power of the borough . . . . to pass an ordinance . . . . requiring the Pennsylvania Railroad to erect, maintain and operate safety gates. . . . A penalty is provided for a failure to comply with the requirements. . . . In the operation of its road and in the running of its cars the judgment of the board of directors of a railroad company, in the absence of statutory provision, is supreme and exclusive. The public safety imperatively requires that there be no division of this great responsibility with others—not even with municipalities . . . . for division of it would be the shifting of it in every case of accountability for failure to properly operate the road or run the cars. But, while this is true, corresponding duties of the highest order are imposed exclusively upon those having the control and management of railroads. One of these is to adopt and use suitable and adequate means to give notice of approaching trains. . . . What particular means, however, shall be employed to protect the public . . . . is left to the company operating the road, the law merely

demanding and requiring reasonable care. . . . What is attempted by the appellee in the present case? Having no voice in the operation of the appellant's road, it undertakes to do what the common law itself does not do. It assumes to declare how the railroad shall perform a public duty . . . . and would substitute its judgment for that of the board of directors as to what kind of protection shall be afforded but with no corresponding responsibility resting upon it. . . . If it. has the power to require the defendant to erect safety gates, it has the power to require the adoption from time to time of such other means as in its judgment ought to be adopted by the company for the protection of the public. . . . The power for which it contends would be practically unlimited. . . . The power which it would exercise may be a desirable one, but courts cannot recognize it unless it exists. . . . " After distinguishing the cases relied upon to support the municipal authority to pass the ordinance and determining that the general welfare clause was not a sufficient warrant for that purpose, we ruled that the borough had no such express or implied power and declared its action void. On principle that case governs the present one.

The assignments of error are sustained, and the decree is reversed; the record is remitted to the court below with directions to reinstate the bill and to grant the injunction prayed for at the cost of the appellee.