Adams *v.* New Kensington, Appellant.

558

Argued September 29, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused November 24, 1947.

*Carroll Caruthers*, with him *Harry W. Crum*, for appellant.

*Vincent R. Smith*, with him *P. K. Jones*, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, November 10, 1947:

The City of New Kensington enacted an ordinance "Regulating the Use, Operation and Possession, Providing for the Licensing of, Fixing License Fees for Music Boxes, Juke Boxes and Mechanical Vending Machines and Imposing Penalties for the Violation Thereof." It provided that no one should have in his possession within the city any music boxes, juke boxes, phonographs or similar devices, operated through the insertion therein of a coin or disk, without having first procured a license therefor; by another section the requirement of a license was extended to the possession of "any vending machines of whatsoever nature" similarly operated. The license fee was fixed at $25 per annum for each and every

such device or machine; for any violation of the ordinance a fine was to be imposed of not less than $50 nor more than $100, with costs, for each and every offense; in default of payment the offender was to be committed to jail for a period not exceeding thirty days. It was provided that "Each and every day that any such machine or device under the terms of this Ordinance shall be operated and used in violation thereof shall constitute a separate and distinct offense under this Ordinance, and shall be subject to separate and distinct penalties hereunder."

Plaintiff owns 200 juke boxes in the County of Westmoreland, about 15 of them in the City of New Kensington; the approximate value of each is $740. They are leased out by plaintiff for operation in various establishments, the receipts being divided between him and the respective lessees; he also supplies the records. He has not applied for a license or paid the prescribed fees. Alleging that the enforcement of the ordinance would cause him irreparable injury and compel him to discontinue entirely the operation of the boxes in New Kensington, he filed a bill in equity to enjoin the enforcement of the ordinance, which, he asserted, was unconstitutional, void, and beyond the legislative power of the city council. The court granted the injunction prayed for, and the City of New Kensington appeals.

It is elementary that an injunction will not be granted to restrain criminal prosecutions on the mere ground that the statute or ordinance on which the prosecution is based is, for any reason, unenforceable, since the party has an adequate remedy at law; he may establish at trial, by way of defense, the invalidity of the legislative enactment. But equity does have jurisdiction to enjoin such a prosecution where it is alleged not only that the statute or ordinance is unconstitutional and void but that its enforcement would cause the plaintiff irreparable loss to his property, either by effecting, if not a total suppression of his business, at least a grave

interference therewith, or by subjecting him to the imposition of cumulative, exorbitant and oppressive penalties pending judicial determination of the validity of the legislation.[1] In such cases, the ground of equitable jurisdiction is the protection of property rights, and the fact that a criminal proceeding is involved is merely incidental: *Mahoning & Shenango Rwy. & Light Co. v. New Castle*, 233 Pa. 413, 418, 82 A. 501, 502; *Martin v. Baldy*, 249 Pa. 253, 258, 259, 94 A. 1091, 1093; *Valley Railways v. Harrisburg*, 280 Pa. 385, 392, 124 A. 644, 646, 647; *Pennsylvania Railroad Co. v. Driscoll*, 330 Pa. 97, 101, 102, 198 A. 130, 133; *Bell Telephone Co. of Pennsylvania v. Driscoll*, 343 Pa. 109, 112, 21 A. 2d 912, 914.[2]

The vital question here is whether the ordinance is valid. It is not a revenue measure. *The City* has disclaimed of record any intention to justify it on that ground and relies entirely upon its police power as the source of its authority to enact the ordinance. Neither does *plaintiff* contend that the ordinance is in reality a

---

[1] "When the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation, the result is the same as if the law in terms prohibited the company from seeking judicial construction of laws which deeply affect its rights": *Ex parte Young*, 209 U. S. 123, cited in *Bell Telephone Co. of Pennsylvania v. Driscoll*, 343 Pa. 109, 112, 21 A. 2d 912, 914.

[2] In *Meadville Park Theatre Corporation v. Mook*, 337 Pa. 21, 10 A. 2d 437, the right of a court of equity to interfere with the enforcement of a penal statute was denied, but only because, as stated in the opinion in that case (p. 24, A. p. 439) : "In the equity proceedings for an injunction no attack was made on the *validity* of the laws which the theatre corporation was charged with violating. The complaint is that the acts the district attorney was proceeding against did not amount to a violation of the criminal laws. In other words, the corporation pleads 'not guilty' to the charges filed against it and demands that a *court of equity* try that issue. This a court of equity cannot do." It was pointed out, however, that the jurisdiction of equity in such cases does exist where, in the attempt to enforce an invalid statute or ordinance, there is a direct invasion of property rights resulting in irreparable injury.

revenue measure under the guise of an exercise of the police power; to maintain such a contention the burden would have been upon him to prove that the fee was unreasonable and more than sufficient to cover the cost of inspection and supervision: *Kittanning Borough v. American Natural Gas Company,* 239 Pa. 210, 213, 86 A. 717, 718; *William Laubach & Sons v. Easton,* 347 Pa. 542, 549, 32 A. 2d 881, 885; *Rock v. Philadelphia,* 127 Pa. Superior Ct. 143, 148, 191 A. 669, 671, 672 (aff. 328 Pa. 382, 196 A. 59). He made no attempt to do this. The question of the validity of the ordinance reduces itself, therefore, to the sole inquiry whether the police power of the City, as derived by grant from the Commonwealth, is extensive enough to justify such an enactment.

The Third Class City Law of June 23, 1931, P. L. 932, sec. 2403, cl. 54, provides that "In addition to the powers and authority vested in each city by the provisions of this act, [the council of each city shall have power] to make and adopt all such ordinances, . . . not inconsistent with or restrained by the Constitution and laws of this Commonwealth, as may be expedient or necessary for the proper management, care and control of the city . . . and the maintenance of the peace, good government, safety and welfare of the city, . . . and also all such ordinances . . . as may be necessary in and to the exercise of the powers and authority of local self-government in all municipal affairs; . . . and to enforce all ordinances inflicting penalties upon inhabitants or other persons for violations thereof, not exceeding three hundred dollars for any one offense, recoverable with costs, together with judgment of imprisonment, not exceeding ninety days, if the amount of said judgment and costs shall not be paid: Provided, however, That no ordinance . . . shall be made or passed which contravenes or violates any of the provisions of the Constitution of the United States or of this Commonwealth, or of any act of Assembly heretofore or that may be hereafter passed and in force in said city."

It is at once obvious that this provision constitutes a grant of extremely broad powers, and such "general welfare clauses" have always been liberally construed to accord to municipalities a wide discretion in the exercise of the police power. "While under the general welfare clause . . . personal and property rights recognized by the general law and guaranteed by organic provisions cannot be unreasonably restrained, courts uniformly regard the general welfare clause, or a general grant of power, as ample authority for the reasonable exercise, bona fide, of broad and varied municipal activity to protect the health, morals, peace and good order of the community. . . . Specifically, under the general welfare clause, or by virtue of general grant of power . . . municipal corporations are authorized to enact appropriate and reasonable ordinances, . . . to abate nuisances and regulate various kinds of occupations that may become nuisances or detrimental to the public health; . . .": McQuillin, Municipal Corporations, 2nd ed. sec. 950 (895), pp. 116, 117. In *O'Maley v. Borough of Freeport,* 96 Pa. 24, 30, it was said of a somewhat similar grant of authority: "That the power here conferred is sufficiently comprehensive to cover every regulation necessary for the government of the borough and protection of its citizens, cannot, we think, be doubted. The only limitation of this power is, that it must be exercised in a reasonable, lawful and constitutional manner." In *The Borough of Warren v. Geer,* 117 Pa. 207, 212, 11 A. 415, 416, the grant of such powers to a borough was said to be "very broad indeed and practically includes whatever conduces to the benefit and advantage of the borough, and would seem to restrict the limitations upon its exercise to those which require ordinances to be reasonable, and not in conflict with the state or federal constitutions." In *Sayre Borough v. Phillips,* 148 Pa. 482, 488, 24 A. 76, it was said: "By the organization of a city or borough within its borders, the state imparts to its creature, the municipality, the pow-

ers necessary to the performance of its functions, and to the protection of its citizens in their persons and property. The police power is one of these. Ordinances of cities and boroughs, passed in the legitimate exercise of this power, are therefore valid." In *Duquesne City v. Fincke,* 269 Pa. 112, 120, 121, 112 A. 130, 133, 134, the question was in regard to the validity of an ordinance forbidding the holding of public meetings on the street without first obtaining a license therefor; the ordinance was sustained on the basis of the grant of authority contained in the Third Class City Law of June 27, 1913, P. L. 568, Art. V, sec. 3, cl. 46,—which was even less broad than that in the Act of 1931. Where the power exists to enact an ordinance as an exercise of the police power there necessarily exists also the concomitant power to impose a license fee to cover the expense of regulation and supervision if such regulation and supervision are necessary or desirable for the public good: McQuillin, Municipal Corporations, 2nd ed., sec. 1089 (989), p. 645. Of course, any restriction imposed by such an ordinance on the use of property must be reasonably conducive to the safety, health, morals or general welfare of the public, for the exercise of the police power is always subject to judicial review and a law based upon it must not be patently beyond the necessities of the case but must bear some rational relation to the end to be attained: *Bryan v. City of Chester,* 212 Pa. 259, 61 A. 894; *Manorville Borough v. Flenner,* 286 Pa. 103, 133 A. 30 (affirming 87 Pa. Superior Ct. 84) ; *White's Appeal,* 287 Pa. 259, 134 A. 409; *Harris v. State Board of Optometrical Examiners,* 287 Pa. 531, 536, 135 A. 237, 239; *Commonwealth v. Zasloff,* 338 Pa. 457, 460, 13 A. 2d 67, 69.

Tested by these principles it would seem that the ordinance here under consideration reasonably falls within the domain of valid legislative action. The record discloses, and indeed it is a matter of common knowledge, that juke boxes are placed principally in restaurants,

taprooms and dance halls some of which are operated until the wee hours of the morning or even all night. It would appear to be entirely in order for a municipality to make sure, by periodic inspections, that they do not become a public nuisance by reason of their being located in a part of the establishment so near a public thoroughfare as to disturb pedestrians, or their being operated noisily or at improper hours, or because of their playing vulgar or obscene records. While it is doubtless true that the operation of these juke boxes has been heretofore generally conducted in a harmless and inoffensive manner, the municipality is nevertheless justified in protecting its citizens against any future possible lapses in that regard. Theatrical, operatic and musical performances and motion picture shows have always been recognized as proper subjects of police inspection and control, and, in comparison with them, the necessity for the supervision and regulation of the music and songs furnished by juke boxes commercially operated is, at best, merely a question of degree. We cannot judicially declare that an ordinance which aims at such regulation and inspection is so patently arbitrary, and so unreasonable an interference with a legitimate business, as not to be warranted by any rational considerations of public safety, morals and general welfare. As a court we are not concerned with the merits or wisdom of legislation but only with the power of the legislative body to enact it.

It is urged that this ordinance involves an illegal differentiation between musical machines operated by the insertion therein of a coin and phonographs not so operated. It is true that a statute or ordinance may not discriminate between persons engaged in the same trade or pursuit: *Sayre Borough v. Phillips,* 148 Pa. 482, 24 A. 76, but it is not invalid merely because it does not prohibit other acts which may be as equally mischievous as the acts prohibited: *Bothwell v. York City,* 291 Pa.

363, 370, 140 A. 130, 132. It appears that some of the stores in New Kensington selling ordinary phonographs and records occasionally play them near the doorways of their establishments in order to attract customers, but the use of juke boxes is in all respects so different from these occasional advertising demonstrations of phonographs that they can scarcely be said to be in the same class as respects the legislative power to discriminate between them in requiring a license for their possession and operation.

Another complaint made against the ordinance is that it confers upon the Chief of Police and the Police Department the duty of regulating and supervising the operation of juke boxes and inspecting the premises where they are installed to determine whether or not their use and operation amounts to a public nuisance, and, if they do constitute such a nuisance, or are operated in violation of the acts of the Commonwealth or the ordinances of the City, the license held by the licensee is to be revoked. Plaintiff is mistaken, however, in his interpretation of this provision of the ordinance. It does not vest in the Chief of Police the power to make any final or binding decision as to whether the operation of the machines amounts in any instance to a public nuisance, but merely imposes upon him the duty which a police officer is always called upon to perform, namely, to investigate whether a violation of the law is apparently being committed; it is only as the result of judicial proceedings before a magistrate that a licensee may be convicted of operating machines in violation of the ordinance. As to the provision that every application for a license must be referred to the Chief of Police for investigation and approval, without any specification in the ordinance of standards to govern his approval or disapproval, the time to attack that provision will be if, and when, a license is arbitrarily refused to any applicant.

It may be well to point out that the question as to the validity of the section of the ordinance which requires a license for possession of "any vending machines of whatsoever nature" operated by the insertion therein of a coin or disk, is not before us for consideration in these proceedings, which are concerned only with music boxes, juke boxes, phonographs and similar devices, so operated.

Decree reversed, and record remanded with direction to dismiss the bill; costs to be paid by plaintiff.