## Cambridge Springs Borough v. Kineston (No. 2)

*John A. Bolard,* borough solicitor, for plaintiff.
*Stuart A. Culbertson,* for defendant.

MOOK, P. J., March 13, 1953.—In our opinion filed on November 7, 1952, 84 D. & C. 110, we upheld the validity of an ordinance of the Borough of Cambridge Springs establishing a license fee for the privilege of maintaining and operating, or permitting the operation of vending machines which may be used for the vending of cigarettes and fixing the license fee at $5 per year. We held that the enactment of such an ordinance was a proper exercise of the police power of the borough.

We have been informed that an appeal has been filed in the Superior Court from our decision in this case. However, defendant, through his counsel, has filed a petition for reargument on the case before us in which he has raised the following points:

1. That the ordinance is an improper exercise of the police power of the borough.

2. The ordinance as it affects the sale of cigarettes is beyond the police power of the borough since the Commonwealth of Pennsylvania has preëmpted the exercise of police power with respect to cigarette vending machines.

3. The ordinance is in reality a revenue measure under the guise of police power.

## I.

In support of his contention that the ordinance is an improper exercise of the police power of the borough, defendant contends that the ordinance unconstitu-

tionally discriminates against him since it applies only to a method of doing business, and as thus applied, is an unreasonable attempt at classification under the police power and is unconstitutional as lacking uniformity.

To begin with we again point out that under the Borough Code there can be no doubt that the borough had at the time of the enactment of this ordinance and now has the right to make reasonable regulations providing for the health, safety and welfare of the borough.

In the early case of The Borough of Warren v. Geer, 117 Pa. 207, 212, the Supreme Court said:

"Section 6 of the act of 1832 gives the council of this borough express power 'to enact such by-laws and make such rules, regulations and ordinances as shall be determined by a majority of them necessary to promote the peace, good order, benefit and advantage of said borough, particularly providing for the regulation of the markets, streets, alleys, highways,' etc., therein. This power is very broad indeed and practically includes whatever conduces to the benefit and advantage of the borough, and would seem to restrict the limitations upon its exercise to those which require ordinances to be reasonable, and not in conflict with the state or federal constitutions."

In White's Appeal, 287 Pa. 259, the Supreme Court, speaking through Justice (later Chief Justice) Kephart, set forth an illuminating discussion of the police power of a municipality. The court said:

"The police power is a function of government to be exercised in varying degrees in certain spheres of action. It is the chief attribute of a sovereign power, for if in its exercise there is conflict with parts of the Constitution, the police power exercised to promote its major objects will prevail; for illustration, pure food and prohibition laws. Its chief sphere of action con-

cerns immediately a restriction on the use of property or the conduct of persons that may be detrimental to public health, morals and safety. Where such an act promotes any of these objects, the limit of its exercise may be their actual attainment, if such thing is possible. . . .

"Regulation under a proper exercise of the police power is due process, even though a property in whole or in part is taken or destroyed. The conditions on which its legitimate exercise is predicated should actually exist or their happening be so likely that restraint is necessary, similar to a court issuing a restraining order for injuries done or threatened to persons or property. Likewise, there should be a reasonable and substantial relation between the thing acted on and the end to be attained, one that promotes health, safety or general welfare, necessary to the common good, and a reasonable demand for regulation, not one that is merely an unnecessary 'experimentation (or interference) with the fundamental rights of the individual': Truax v. Corrigan, 257 U. S. 312, 338."

We have already pointed out in the first opinion filed in this case that the tobacco industry is an industry or business which requires regulation in the interest of public health and morals, and reasonable restrictions may be properly exercised under the police power of the State. The State itself has enacted laws which are part of the Criminal Code, making it unlawful to sell tobacco in any form to minors under the age of 16 and making it unlawful to sell or furnish cigarettes in any manner to any minor. However, as in most cases, the enforcement of this statute is left to local officials, including chiefs of police of the boroughs of the Commonwealth. The sale of cigarettes through an automatic vending machine is a commonly accepted device. These machines may be found anywhere, in stores, restaurants, licensed establishments, newsrooms, pool

rooms, theatre lobbies, bus stations, railroad stations, or other public places. In order that the law may be properly enforced by the borough officials, is there any sound reason why the borough officials should not require the registration of the ownership and responsibility for machines of this character through the means of the issuance of a license for the use of such machine? In some cases, how else can the borough officials find out who is responsible for the machine? Suppose the real appellant in this case, who is not Mr. Kineston at all, but Mr. Spaulding, decides to place a machine in the bus station in Cambridge Springs. If Mr. Spaulding is not required to register with the borough the fact that he is the owner of the machine, how else will the borough officials know who is responsible for the operation of the machine if minors are patronizing the machine in great numbers as might well be the case in such a public place. We are clearly of the opinion that the registration requirement is nothing more than a most reasonable regulation on the part of the borough in order that the borough officials may know where these machines are located and who is responsible for their maintenance and operation, and if this be so then there likewise is no question that the borough has the right to attach a reasonable license fee for registration and granting a permit to cover a part of the costs of policing these machines.

The learned counsel for defendant, in their brief, advance the argument that the licensing of the vending machines is an unreasonable discrimination between sales through such devices and sales by merchants over the counter. In support of their argument they claim that minors could just as easily steal a package of cigarettes left on the counter or that the merchant himself could easily violate the law by surreptitiously selling to minors and that there is, therefore, no more

reason to place a license fee on the use of machines than to place a license fee on the ordinary merchant. They also contend that the operation of a machine makes a certain amount of noise and there is no reason to suppose that a person who has a machine in his place of business would allow minors to obtain cigarettes through a machine than to sell to him directly over a counter. In respect to this contention we will point out again as we pointed out before that machines are frequently placed in places including public places where no one is watching the operation of the machine or making himself responsible for its operation. Furthermore, we do not think it is necessary to labor the point that these automatic devices are used by merchants because they save the time and bother of supervising their operation and often times they are not supervised at all. Take the example used in our previous opinion. A machine is placed in a gasoline station, the operator of the station is outside pumping gas. Meanwhile, the machine is accessible to any minor who happens to be inside the premises and sees fit to purchase cigarettes. Of course, the minor could steal cigarettes from the operator of a gasoline station, but the law places restraints against conduct of that kind and the minor himself can be prosecuted. Furthermore, this argument is completely answered by the Supreme Court in the case of Adams v. New Kensington, 357 Pa. 557. There the court upheld the validity of an ordinance fixing a license fee on possession of juke boxes. The court, after reviewing the police powers held by cites of the third class, which are not dissimilar to those granted to boroughs, said at page 564:

"Tested by these principles it would seem that the ordinance here under consideration reasonably falls within the domain of valid legislative action. The record discloses, and indeed it is a matter of common knowledge, that juke boxes are placed principally in

restaurants, taprooms and dance halls some of which are operated until the wee hours of the morning or even all night. It would appear to be entirely in order for a municipality to make sure, by periodic inspections,, that they do not become a public nuisance by reason of their being located in a part of the establishment so near a public thoroughfare as to disturb pedestrians, or their being operated noisily or at improper hours, or because of their playing vulgar or obscene records. . . . We cannot judicially declare that an ordinance which aims at such regulation and inspection is so patently arbitrary, and so unreasonable an interference with a legitimate business, as not to be warranted by any rational considerations of public safety, morals and general welfare. As a court we are not concerned with the merits or wisdom of legislation but only with the power of the legislative body to enact it.

"It is urged that this ordinance involves an illegal differentiation between musical machines operated by the insertion therein of a coin and phonographs not so operated. It is true that a statute or ordinance may not discriminate between persons engaged in the same trade or pursuit: Sayre Borough v. Phillips, 148 Pa. 482, 24 A. 76, but it is not invalid merely because it does not prohibit other acts which may be as equally mischievous as the acts prohibited: Bothwell v. York City, 291 Pa. 363, 370, 140 A. 130, 132."

If a municipality can regulate the use of juke boxes by requiring the issuance of a license and the payment of a license fee, and can regulate the use of pin ball machines by similar legislation (Murray v. Williams, Burgess, 162 Pa. Superior Ct. 633), it certainly follows that it can likewise regulate the use of cigarette vending machines as part of the police power in order to properly enforce criminal laws of the Commonwealth relating to the use of cigarettes.

## II.

Defendant next contends that even if the regulation of the sale of cigarettes by vending machines is a legitimate exercise of the police power of the Commonwealth it is beyond the police power of the borough, since the Commonwealth of Pennsylvania has preempted the exercise of police power with reference to such machines. In support of this contention it is argued that the Commonwealth through the Cigarette Tax Act of 1935, to wit, Act of June 14, 1935, P. L. 341, sec. 3; 72 PS §3156, and the Act of June 25, 1947, P. L. 935, sec. 3, 71 PS §250, has preëmpted to itself the exclusive exercise of its police power in the control of the tobacco industry. This argument presents a very interesting paradox for here defendant contends that a self-designated revenue act of the Commonwealth was enacted under the police power of the State, while in the same breath he argues that the Cambridge Springs ordinance, which was enacted under the police power of the borough, is in reality a revenue measure. To be sure, the statutes referred to involve the police power of the State in the collection of the tax, but once the tax is paid and the proper stamps affixed to each package of cigarettes, the statute prescribes no further regulations or restrictions whatsoever concerning the sale and dispensing of the taxed cigarettes. There is, therefore, in our opinion, no merit to the contention that by this legislation the Commonwealth has preëmpted the exercise of the police power with reference to such machines.

## III.

Finally defendant contends that the ordinance is in reality a revenue measure under the guise of police power and in support of this contention alleges that there is a complete absence of any really regulatory requirement or designation of any duties under the

ordinance other than the mere issuance of a license for the payment of $5.

We have already pointed out in our discussion of defendant's first contention that it is important to the borough officials to know where these machines are located and who is responsible for their operation. It is unnecessary to further labor the point that with this information the borough officials are in a better position to police their use. While we do not have the entire text of the ordinance of the City of New Kensington before us which was questioned in the case of Adams v. New Kensington, supra, however, from that portion of the ordinance set forth in the opinion, it appears that there is nothing more in that than in the Cambridge Springs ordinance. Accordingly, the absence of further regulatory requirements or designation of duties does not invalidate the ordinance as a proper police measure.

Since the case is before us on the rehearing one other matter needs to be mentioned, which was not raised by defendant because of course he is not particularly interested in this phase of the case. However, in the recent case of Commonwealth v. Brenneman, 172 Pa. Superior Ct. 198, the court in quoting Commonwealth v. Peacock, 118 Pa. Superior Ct. 168, said:

"A judgment affirming the Justice of the Peace, dismissing the appeal, or sustaining the appeal, is not sufficient, but will be reversed."

These decisions apply to appeals from summary convictions for violation of State laws and not a borough ordinance as in the present case. However, rather than create doubt as to the validity of our final order entered on November 7, 1952, we hereby vacate that order and enter the following

*Order*

And now, March 13, 1953, the appeal is dismissed and defendant, Norman L. Kineston, is adjudged

guilty of violation of the ordinance of the Borough of Cambridge Springs, Crawford County, Pa., and he is sentenced to pay a fine of $10 and costs and in default of the same to be committed to the Crawford County Jail for a period of five days.