## Commonwealth v. Lewis

*Kenneth E. Fox, Jr.*, for Commonwealth.
*Alvah M. Shumaker*, for defendant.

HENDERSON, J., November 6, 1962.—This matter comes before the court on a motion of defendant at the above number and term to quash the indictment brought under The Penal Code of June 24, 1939, P. L. 872, sec. 414.1, added by the Act of December 8, 1959, P. L. 1714, sec. 1, 18 PS §4414.1. The information charges defendant with malicious use of the telephone in that defendant did unlawfully and maliciously address certain lewd, lascivious or indecent words or language to the proxecutrix by telephone.

The motion to quash alleges that the statute is so vague and indefinite and uncertain in its language, and so incompletely defines any alleged offense, that the statute is repugnant to the provisions of the Constitution of Pennsylvania and to the Constitution of the United States; that the statute is further unconstitutional under both constitutions because it prescribes no standard for a determination of whether the words used are in fact lewd, lascivious or indecent; that the statute is unconstitutional under both constitutions because it discriminates against conversations by telephone; and that the statute is unconstitutional under both constitutions in that it impinges on the constitutional guarantees of freedom of speech.

Defendant in his brief states that the motion to quash the indictment "is a frontal attack on the statute itself and the indictment." The brief also states "we assert a frontal attack on the statute, irrespective of the actual conversation that may be involved in this case. The district attorney should welcome this attack because the constitutional aspect of the case should be resolved." In his brief, defense counsel further requests

that the grounds be placed on both the First and Fourteenth Amendments.

The act in question under which this information has been brought reads as follows:

"Malicious use of telephones: Whoever telephones another person and addresses to or about such other person any lewd, lascivious or indecent words or language, or whoever anonymously telephones another person repeatedly for the purpose of annoying, molesting or harassing such other person or his or her family, shall be deemed guilty of the misdemeanor of being a disorderly person, and, upon conviction, shall be fined in any sum not exceeding five hundred dollars ($500), to which may be added imprisonment in the county jail not exceeding six months: Provided, That any offense committed by the use of a telephone, as herein set out, may be deemed to have been committed at either the place at which the telephone call or calls were made or at the place where the telephone call or calls were received."

This statute deals with two completely different type situations. The part challenged by the motion to quash is that portion under which the indictment is drawn, the pertinent part of which is as follows:

"Whoever telephones another person and addresses to or about such other person any lewd, lascivious or indecent words or language . . . shall be deemed guilty of the misdemeanor of being a disorderly person . . ."

It is this portion of the statute only which is being considered herein.

Defendant alleges that the above-cited statute is so vague and indefinite as to offend against the Due Process Clause of the Federal Constitution; more particularly in that it contains no definition of the conduct proscribed and no ascertainable standard of guilt. Defendant first quotes from Roth v. United States, 354 U. S. 476, 488, 1 L. Ed. 2d 1498 (1957):

". . . The door . . . into this area [the first amendment] cannot be left ajar; it must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests . . ."

And he quotes further from Manual Enterprises v. Day, 370 U. S. 478, 497, 8 L. Ed. 2d 639, 652 (1962), that:

"We risk erosion of First Amendment liberties unless we train our vigilance upon the methods whereby obscenity is condemned no less than upon the standards whereby it is judged."

In the court's dealing with individual liberties protected by the First Amendment of the United States Constitution, the court is strongly urged to adopt the presumption of the constitutionality of any statute and particularly of the statute here involved. In Land Holding Corporation v. Board of Finance and Revenue, 388 Pa. 61, 72, 130 A. 2d 700 (1957), the Supreme Court of Pennsylvania stated this position as follows:

"In Sablosky v. Messner, supra, we said . . . '. . .'It is axiomatic that he who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so . . . All presumptions are in favor of the constitutionality of acts and courts are not to be astute in finding or sustaining objections to them: . . ." [Cases cited] "An act may not be declared unconstitutional unless 'it violates the Constitution clearly, palpably, plainly; and in such manner as to leave no doubt or hesitation in our minds.' [Cases cited]" ' . . ."

The court finds that ordinarily this is the presumption to be applied in determining constitutionality of statutes. However, in cases of the kind in question we are ruled by the opinion of Mr. Chief Justice Jones in William Goldman Theaters, Inc. v. Dana, 405 Pa. 83, 87, 173 A. 2d 59 (1961), as follows:

"... But, where a restrictive statute is made to operate in the area of individual liberty, 'the usual presumption supporting legislation is balanced by the preferred place given in our scheme to the great, the indispensable democratic freedoms secured by the First Amendment. [Cases cited] That priority gives these liberties a sanctity and a sanction not permitting dubious intrusions.' ..."

This court then, being aware of the off-setting balance of the usual presumption, will not consider in its determination of the case the presumptions cited above from the Land Holding Corporation case, supra.

On defendant's position with regard to the statute being so vague and indefinite as to offend the Federal Constitution provisions, he cites as binding and controlling the case of Hallmark Productions, Inc. v. Carroll, 384 Pa. 348, 121 A. 2d 584 (1956), and Commonwealth v. Blumenstein, 396 Pa. 417, 153 A. 2d 227 (1959).

The Hallmark case, which was decided in 1956, held that the Motion Picture Censorship Act of May 15, 1915, P. L. 534, as amended, was unconstitutional in that the statute was so vague and indefinite as to offend the Due Process Clause of the Fourteenth Amendment of the Federal Constitution. The statute there under consideration provided that:

"The board shall examine or supervise the examinations of all films, reels, or views to be exhibited or used in Pennsylvania; and shall approve such films, reels, or views which are moral and proper; and shall disapprove such as are sacrilegious, obscene, indecent, or immoral, or such as tend, in the judgment of the board, to debase or corrupt morals."

In the decision in the Hallmark case, the Supreme Court of Pennsylvania held that the question of censoring films which are "sacrilegious, obscene, indecent, or immoral, or such as tend, in the judgment of the

138

board, to debase or corrupt morals", under cited cases of the Supreme Court of the United States, ". . . must be held subject to the same fatal objections as those which invalidated the statutes held unconstitutional by that Court."

The Blumenstein case, which was decided in 1959, grew out of the conviction of the manager of a theater for having shown certain films under a statute which states that whoever permits the showing of "moving pictures of a lascivious, sacrilegious, obscene, indecent or immoral nature and character, or such as may tend to corrupt morals, is guilty of a misdemeanor." The court also held this statute to be unconstitutional.

The last Pennsylvania case found on this subject is the case of William Goldman Theaters, Inc. v. Dana, supra, under which the Supreme Court of Pennsylvania found the Motion Picture Control Act of September 17, 1959, P. L. 902, to be unconstitutional under the Fourteenth Amendment of the Federal Constitution and under article I of the Pennsylvania Constitution. The act required any person intending to sell, lease, lend, exhibit or use any motion picture film to register with the administration board set up under the act and to notify the board within 48 hours before the first showing in Pennsylvania of the time and place of such showing. At any time after such showing, upon request of the board, an exact copy of such film was required to be furnished to the board for examination, and if a majority of the members of the board were of the opinion that the film was "obscene" or of the opinion that it was "unsuitable for children", the showing of the film could be disapproved, or disapproved for exhibition to children. The statute provided that a film, reel or view is obscene "if to the average person applying contemporary community standards its dominant theme, taken as a whole, appeals to prurient interests."

This act was found to be "clearly invalid on its face" under article I, section 7, of the Pennsylvania Constitution in that it provides for a precensorship of the exercise of the individual's right freely to communicate thoughts and opinions. The act was also found to be unconstitutional under article I, sections 6 and 9, of the Pennsylvania Constitution by reason of certain trial-by-jury requirements. The court also held that this act was unconstitutional under the Fourteenth Amendment of the United States Constitution in that it contained "defective censorial standards" and because of the failure of its procedural requirements to safeguard adequately the constitutionally protected rights of "freedom of speech."

This court specifically finds that the case at bar is not ruled by the William Goldman Theaters case in view of the fact that there is no question of precensorship involved herein and that there is no procedural question involving constitutionally protected trial-by-jury rights as there was in that case. Further, this court finds that the case at bar is not governed by the William Goldman Theaters case in the matter of "defective censorial standards" by reason of the statement found on page 96 thereof, which reads as follows:

"The definition of obscenity, as used in the Act of 1959, was obviously culled from the opinion of the United States Supreme Court in Roth v. United States, 354 U. S. 476, 489 (1957) in an attempt to satisfy the due process requirement of clarity under the Fourteenth Amendment. *But, the definition of obscenity there enunciated has never been approved by the Supreme Court other than in the context of a criminal proceeding . . .* " (Italics supplied.)

Since the case at bar is a criminal proceeding, then this court must go further to determine whether or not under the Roth case the definition of obscenity there enunciated should be here applied as constitutional.

With regard to criminal proceedings, it is interesting to note that the Goldman Theaters case which followed both the Hallmark and Blumenstein cases states as follows (p. 93-94) :

"The utterance of obscene matter was a crime at common law for which a defendant chargeable therewith was entitled to a trial by jury. This was likewise so under similar guarantees in the Constitution of 1790 and 1838, long before the adoption of our present Constitution. [Cases cited]

"The above quoted provisions of Sections 6 and 9 of Article 1 guarantee that a person can be found guilty of a crime of the indicated description *only if* an impartial jury of the vicinage is of the opinion that his utterance was obscene, i.e., only if twelve jurymen are of the opinion that, applying contemporary standards in the community, the dominant theme of the utterance taken as a whole appealed to the average person's prurient interest."

This quoted statement of the present criminal law of Pennsylvania adopted the standard approved by the Roth case as being a proper standard for application in these cases.

It is interesting to note that one of the cases cited in the foregoing passage is the Blumenstein case, upon which defendant now relies in his claim that this statute is unconstitutional.

It, therefore, would appear that if this standard were the standard to be applied to the statute in question, then under the Roth case and under the Goldman Theaters case, it must be found that the statute in question is not too vague and indefinite and that the words used in the statute do prescribe a standard which is constitutional under both State and Federal Constitutions.

This standard, which has been approved as cited above, is not, however, made a part of the wording of

the statute in question. However, this court does not find any requirement that the definitions or the standard itself must be included in the statute. The constitutional question arises not over whether or not the standard is set forth in the statute but rather over the question of whether or not the proper standard is applied in the given case. In view of the fact that the most recent Pennsylvania ruling and the recent Federal ruling, both cited above, have agreed upon the standard to be used in this type case, it is felt that these rulings are binding upon all trial courts in the Commonwealth and that these approved standards shall be used by the court and jury in each case coming up under the act in question. Therefore, defendant's argument in this regard is rejected.

Mr. Justice Brennan in the Roth case stated (p. 491):

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . .' United States v. Petrillo, 332 U. S. 1, 7-8, 91 L. Ed. 1877, 1883. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '. . . boundaries sufficiently distinct for judges and juries fairly to administer the law. . . . That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense . . .' [Cases cited]

"In summary, then, we hold that these statutes, ap-

plied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited."

The United States Supreme Court in 1959 in the case of Smith v. California, 361 U.S. 147, 4 L. Ed. 2d 205, 80 S. Ct. 215 (1959), again applied the standard of the Roth case, and Mr. Justice Frankfurter in his concurring opinion said (p. 165) :

". . . It bears repetition that the determination of obscenity is *for juror or judge* not on the basis of his personal upbringing or restricted reflection or particular experience of life, but on the basis of 'contemporary community standards' . . ." (Italics supplied.)

Thus, we find it to be consistent with the position of the courts in stating that if the proper standard is applied to the statute in question by the court and the jury, then the statute is not unconstitutional on those grounds.

Defendant further alleges that this statute violates the freedom of speech provisions of the Pennsylvania and Federal Constitutions.

The cases cited above are dispositive of the freedom of speech argument as well as the argument concerning vagueness, indefiniteness and lack of a proper standard and need not be further discussed here except to state that the right of freedom of speech is not an absolute right and all speech is not afforded constitutional protection. This is the law in Pennsylvania as shown by the Goldman Theaters case, supra, at page 87, where Mr. Chief Justice Jones said:

"Apart from the Fourteenth Amendment, the guarantee of free communication of thought and opinion is independently protected by our State Constitution of 1874. Article 1, §7, thereof recognizes and declares that 'The free communication of thoughts and opinions is

one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, *being responsible for the abuse of that liberty.*' " (Italics supplied.)

This is further the law in the said Courts as shown by the Roth case in which Mr. Justice Brennan says (p. 481):

"The dispositive question is whether obscenity is utterance within the area of protected speech and press. Although this is the first time the question has been squarely presented to this Court, either under the First Amendment or under the Fourteenth Amendment, expressions found in numerous opinions indicate that this Court has always assumed that obscenity is not protected by the freedoms of speech and press. [Cases cited]"

The court then further specifically holds that obscenity is not protected speech.

Defendant then alleges that the statute is unconstitutional in that it discriminates against telephone conversations. He cites one case involving Philadelphia tax on rented properties: Murray v. Philadelphia, 364 Pa. 157, 71 A. 2d 280 (1950), as determining this issue. The court finds that case not to be in point.

". . . It is true that a statute or ordinance may not discriminate . . . but it is not invalid merely because it does not prohibit other acts which may be as equally mischievous as the acts prohibited . . .": Adams v. New Kensington, 357 Pa. 557, 565, 55 A. 2d 392 (1947).

This court will not hold the statute in question to be invalid merely because it does not prohibit other acts equally mischievous as the acts prohibited.

Defendant also alleges that the indictment is faulty in that it lacks particularity and is drawn only in the general words of the statute without setting forth the particular language allegedly used by defendant. Defendant cites in support of this allegation the case of Russell v. United States, 369 U. S. 749, 8 L. Ed. 2d 240

(1962), which involves a prosecution under Federal statute in the Federal courts governed by the Federal Rules of Procedure. We find that this case does not control the case at bar since the case at bar grows out of State law and is governed by State rules of procedure.

"Since the passage of the Criminal Procedure Act of 1960, by which it was made sufficient to charge offenses substantially in the words of the Act of Assembly, numerous cases have arisen in which the defendant has moved to quash for insufficiency of description. The Courts have uniformly held in such cases that this is not ground to quash, though a bill of particulars may be asked for, which in a proper case the Court will order": Henry on Criminal Procedure in Pennsylvania, section 358, page 431.

It is "sufficient that criminal information supports indictment in its material averments and that indictment charges crime substantially in language of statute and with such certainty that defendant knows what he is called upon to answer": Maurer Notes on Pennsylvania Criminal Law and Procedure, section 2792, page 725.

The court finds in the case at bar that the information is not sufficiently lacking in particularity to be objectionable.

### Order of Court

Now, November 6, 1962, defendant's motion to quash is hereby dismissed. Exception granted.