## Consolidated Rail Corporation v. Colville

*John J. Repcheck* and *John Jenchura*, for plaintiff.

*Robert L. Eberhardt* and *Stella Smetanka*, for defendants.

McGOWAN, *J.*, February 5, 1981—Plaintiff, Consolidated Rail Corporation (hereinafter Conrail), has instituted a suit against the various defendants who collectively constitute the office of the District Attorney of Allegheny County, requesting injunctive relief from prosecution under the criminal laws and also plaintiff asks for a declaratory judgment interpreting the Wiretapping and Electronic Surveillance Control Act (hereinafter Wiretap Law), 18 Pa.C.S.A. §5701 et seq.

It is the contention of plaintiff, a rail common carrier involved in interstate commerce and so involved in the Commonwealth of Pennsylvania, that its monitoring of certain communications made between or among its personnel is not forbidden by the Wiretap Law.

The two situations wherein calls are monitored are as follows:

(1) Crew dispatchers of plaintiff make calls to

plaintiff's employes to assign work to crews. This is done pursuant to some sort of a roster system for work assignments worked out in the context of a labor agreement with train employes. It gives preference to seniority and provides penalties against plaintiff if the agreement is not followed requiring plaintiff to not only pay the employe called out, but payment to the employe who allegedly should have been called out.

The calls are monitored (tape recorded) to preserve a record in the event of subsequent grievances as to whether or not the work assignment calls were made so as to avoid with certainty having to pay two men for the work of one.

According to plaintiff's complaint, many grievances have arisen over whether or not the calls were made as required by company rules and applicable labor agreement. These calls are made over the phone company or communication common carrier lines.

(2) Plaintiff records instructions given out telephonically to train and engine crews as well as "interlocking operators" to direct the movement of trains. These are principally "tower" to "engine cab" communications. These are sometimes made by way of the lines of a communication common carrier.

Again, this information is tape recorded.

There is no allegation in plaintiff's complaint that the same is done for accident avoidance but merely as an integral part of record keeping for post-accident investigations so as to be able to assess responsibility. However, one cannot help but feel that this will improve railroad safety.

Plaintiff, prior to the filing of this suit, contacted

548

the Allegheny County District Attorney's Office for its opinion or attitude with regard to the legality or illegality of the above mentioned activity.

By letter of July 25, 1980, the district attorney's office communicated its opinion that the use of telephone recording equipment on Conrail telephone lines was in violation of the act and further indicated the intention of the district attorney's office not to aggressively initiate prosecution but to approve properly filed private criminal complaints by "aggrieved persons."

The aforementioned letter of the district attorney's office does not distinguish between the two types of activity mentioned above.

Indeed, it does not identify either, but in context it is assumed that one or both of the identified types of activity are, in the view of the Allegheny County District Attorney's Office, criminal.

To plaintiff's complaint, the district attorney's office has filed preliminary objections.

Plaintiff has countered by filing preliminary objections to defendants' preliminary objections.

Plaintiff's preliminary objections to defendants' preliminary objections are technical in nature and inasmuch as defendants' preliminary objections deal in the main with jurisdictional matters, which are not waivable, in the interest of the efficient and orderly administration of justice we shall consider defendants' preliminary objections as if they were filed in timely fashion and in accordance with all general and local rules of court.

## DEFENDANTS' PRELIMINARY OBJECTIONS

As a general proposition, defendants first raise the argument that equitable jurisdiction will not extend to the control of prosecution of a crime:

Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877 (1943). There are, of course, exceptions to this proposition, one of which is that equity will act to restrain a pending criminal prosecution, if it is alleged that there is no adequate legal remedy in that the legal remedy will result in a multiplicity of prosecutions: Pennsylvania Society for PCA v. Bravo Enterprises, Inc., 428 Pa. 350, 237 A. 2d 342 (1968). See also Adams v. New Kensington, 357 Pa. 557, 55 A. 2d 392 (1947). It is apparent from the district attorney's own correspondence that such a multiplicity of prosecutions will be occasioned in that each intercept in which an individual files a private complaint which will be approved by the district attorney will constitute a separate crime.

It is clear from plaintiff's allegations, which for purposes of defendants' demurrer we accept as factually correct, that individuals employed by Conrail as well as the corporate entity Conrail itself, will be subjected to as many prosecutions as there are complained of allegations of criminal violations of the Pennsylvania Wiretap Law.

Under these premises, equity has subject matter jurisdiction based on the inadequacy of a legal remedy for Conrail and its employes.

Next, defendants argue that the declaratory judgment action must fall because of the provision of the Declaratory Judgments Act, 42 Pa.C.S.A. §§ 7531, 7540, requiring all persons to be made parties who have or claim any interest that would be affected by the declaration.

The same provision of the Declaratory Judgments Act, however, goes on to provide that in the event of non-joinder of such persons, they will not be affected by the provisions of any declaration.

Defendants argue that the court is powerless to act absent the joinder of the various and several

district attorneys of the Commonwealth of Pennsylvania and particularly the Attorney General of the Commonwealth of Pennsylvania.

It is apparent that defendants have confused the concepts of "indispensable" versus "necessary" parties.

In any type of claim, an indispensable party must be of record before an action can proceed. That rule is not necessarily the case in regard to a necessary party.

While the Declaratory Judgments Act, section 7540, requires that all persons having a claim be made parties if their claim would be affected by the declaration, the same section of the Declaratory Judgments Act provides that a decree without such joinder will not adversely affect the right of persons not so joined.

Hence, plaintiff's declaratory judgment complaint ought not to fall by virtue of plaintiff's failure or refusal to join these other persons.

Moreover, it is difficult to see why the other district attorneys in counties outside of Allegheny should have more than an academic interest in a decree of an Allegheny County Court which is not enforceable in their county.

As to the attorney general, the record discloses that, because of the challenge to the constitutionality of the Wiretap Law, he was served with a complaint and given notice of the pendency of this action. The attorney general, thus, is free to request intervention to protect the interests of the office such as they are.

Apparently, at this juncture, the attorney general has declined to do so.

Even after judgment, however, the rules of court permit intervention by the attorney general.

Thus, disposing of defendant's preliminary objections, we meet their arguments to the merits of plaintiff's claim. Essentially, the district attorney argues that plaintiff's own complaint shows that plaintiff in the two situations above referenced, violates the Wiretap Law.

Plaintiff advances several oppositions: (1) The Wiretap Law is unconstitutionally vague; (2) a complicated theory which has as its linchpin the thesis that one cannot intercept a wire or oral communication except through an illegal "intercepting device."

Both of these arguments are unpersuasive and cannot be adopted by this court.

In count VII of plaintiff's complaint, it takes the position that its "in-house" so to speak, telephone communication monitoring, not being operated through the facilities of the phone company or other communication common carrier, are not reached by the prohibitions of the Wiretap Law.

With this we agree.

The balance of this opinion is devoted to such communications of plaintiff in the earlier described categories which are made through the facilities of a communication common carrier such as defined in the Wiretap Law.

With regard to whether or not a violation is made by virtue of plaintiff's activity in this set of circumstances in discussion, it is apparent, then, that apart from a violation predicated on the position of an "intercepting device," the question is whether or not the "intercepting" being done by plaintiff is excepted from the rigors of the law, by virtue of the fact that, ". . . all parties to the communication have given prior consent to such interception . . ." Wiretap Law §5704(4).

The facts as pleaded which we accept as true for purposes of defendants' demurrer, are that written notices to all affected employes were given with regard to both monitoring situations earlier described.

The employes were told that they would hear a beep and that in the above two, and some other situations, their phone conversations with the employer would be recorded.

Plaintiff also alleges that when calls are made to call out work crews, there is an intermittent 15 second beeping to serve as a reminder that the call from the dispatcher to the worker is being recorded.

Similarly, the train movement monitoring, to the extent that it is done telephonically, employs the 15 second beeps.

Because of the aforementioned communication to the employes in writing, and the use of the beep tone, all employes are aware that their conversations are being recorded.

The Wiretap Law, perhaps wisely, does not specify or elaborate on the consent concept other than to require "consent."

Defendants' position appears to be, as gleaned from its letter to representatives of plaintiff, that advance notice to the employes, without more, is not enough to deem consent of the employes to have occurred. Stated alternatively, some affirmative conduct on the part of the employes indicating their consent is required.

At first blush, it would appear that such a position is eminently reasonable, especially when, as the district attorney's letter correctly points out, the complaints activating this entire dispute came from the very employes, or at least their collective bargaining representatives, from whom plaintiff feels it has "consent."

The problem is that what is essentially a labor dispute which would ordinarily be resolved by appropriate grievance adjustment mechanisms, either in the labor contract between the parties or by applicable Federal or state law, threatens to become a series of private criminal complaints burdening an already congested criminal justice system.

Obviously, what is consent for purposes of a labor dispute, is not necessarily consent, or the lack thereof, in the context of the criminal law.

Our Statutory Construction Act requires that statutes that are penal in nature be strictly construed.

The fact that the employes are on notice that these types of phone conversations will be recorded, and indeed, while the conversation goes on, the employe is reminded that his conversation is recorded, seems on the one hand to do away with the vice that the Wiretap Law was aimed to eliminate, namely the underhanded and surreptitious invasions of privacy by unauthorized intercepting or divulging of what a speaker thought to be a private matter between him and his listener. The employe in both of the circumstances laid out in plaintiff's petition, has in the case of the call assigning him work, little, if anything to say, other than to identify himself upon picking up the phone when called by the dispatcher and accepting or refusing the work assignment. The essential communications between the parties are a request to come to work and an assent or refusal to do the same.

If the employe called in such a situation truly objects to having his utterances "intercepted," the proper thing to do is to refuse to speak on the telephone when in receipt of the very call that the recipient knows is being or about to be recorded. What-

ever the consequences of this interrelationship between such an employe and the employer be is of no concern to this court in this case. This is a matter for the amicable resolution of the parties or the workings of their labor agreement to resolve.

With regard to the other factual situation presented, it would seem that the employe again has even less standing to complain.

What is being monitored, it must be remembered, is the sending of instructions regarding train movements.

The recipient, from all this record shows, makes no audible sounds susceptible of being intercepted, divulged or otherwise criminally dealt with other than an acknowledgement of having received the instructions. Such an acknowledgement is essential to the safe operation of the railroad. The very operation of trains by a crew, requires a high degree of safety and the assessment of responsibility for any violation thereof. With knowledge beforehand of the recording by all crew members, this undertaking creates an implied consent by any crew member to the recording of any of his conversation responsive to the train movement instructions.

Hence, we perceive that in both situations, especially the latter, there exists prior consent, thereby saving the monitoring activities of plaintiff from being designated unlawful within the meaning of the Wiretap Law.

It is to be recognized that this conclusion in this opinion is based upon a view of all the facts pleaded most advantageous to plaintiff which at the demurrer stage is the view we are compelled to take.

## POSSESSION OF AN INTERCEPTING DEVICE

The mechanics of interception in both of the

above circumstances are not clearly set forth by plaintiff.

Presumably, the tape recording or monitoring is done with an "intercepting device." There remains, then, whether or not there could be a prosecution of plaintiff for the mere possession of the device by which it makes what we have held to be the lawful monitoring of certain phone calls.

It would seem that the exemption of items purchased or used "in the ordinary course of the business" of plaintiff would remove these devices from being criminally proscribed "intercepting devices."

Considering the foregoing, as to both the declaratory judgment action and the equity action, we cannot say as a matter of law that plaintiff is not entitled to the relief it requests based on the facts that it has pleaded.

An order dismissing the preliminary objections of defendants will be entered.

## ORDER

And now, February 5, 1981, after oral argument in open court and upon review of the pleadings and briefs filed, it is hereby ordered and decreed that the preliminary objections of defendnats be and the same are hereby dismissed with defendants being given 20 days leave to file an answer to plaintiff's complaint.